In the Matter of HARRY CHERRY, Appellant, against THE BOARD OF REGENTS OF THE UNIVERSITY OF THE STATE OF NEW YORK, Respondent.

Argued May 28, 1942; decided October 15, 1942.

*Israel Hoffman* and *Laurence J. Rittenband* for appellant. Employing and making use of advertising solicitors or free publicity press agents did not constitute unprofessional conduct within the meaning of subdivision 2(h) of section 1311 of the Education Law (Cons. Laws, ch. 16) providing for revocation and suspension, where the dentist has been otherwise or in any other way guilty of unprofessional conduct. (*Brown* v. *University of State of New*

*York*, 242 App. Div. 85; 266 N. Y. 598.) Subdivision 2(h) of section 1311 of the Education Law is unconstitutional. The section is vague and indefinite and sets up no standards to guide the Board of Regents in formulating its rules as to when the dentist has been otherwise or in any other way guilty of unprofessional conduct. The Board itself may not set up standards since that is the function of the Legislature. (*Semler* v. *Oregon State Board of Dental Examiners*, 294 U. S. 608; *Matter of Small* v. *Moss*, 279 N. Y. 288; *Green Point Sav. Bank* v. *Zoning Appeals Board*, 281 N. Y. 534; *Schechter Poultry Corp.* v. *United States*, 295 U. S. 495; *Panama Refining Co.* v. *Ryan*, 293 U. S. 388; *Matter of Ellis*, 258 App. Div. 558; *People ex rel. Karlin* v. *Culkin*, 248 N. Y. 465; *Connally* v. *General Constr. Co.*, 269 U. S. 385; *United States* v. *Cohen Grocery Co.*, 255 U. S. 81; *Standard Chemicals & Metals Corp.* v. *Waugh Chemical Corp.*, 231 N. Y. 51.) The determination of the Board of Regents cannot be sustained under subdivision 2(g) of section 1311 for the reasons that petitioner was not charged with violating 2(g); that at the hearing respondent conceded that 2(g) was not violated and had no application; and that rule 5 of the Board of Regents is restrictive of subdivision 2(g) of section 1311 and is, therefore, invalid. (*Brown* v. *University of State of New York*, 242 App. Div. 85; 266 N. Y. 598; *State Board of Medical Examiners*, 149 Ga. 716; *State* v. *Robinson*, 288 Mo. 659; *Abrams* v. *Jones*, 35 Idaho 532.)

*John J. Bennett, Jr., Attorney-General* (*Bernard Bienstock* of counsel), for respondent. The findings and determination were just, legal and based upon sufficient legal evidence. The rules governing dental advertising were adopted for the purpose of maintaining proper professional standards and for the protection of the public against unscrupulous practitioners. (*Niagara Falls Power Co.* v. *Water Power Control Comm.*, 267 N. Y. 265; *New York Water Service Corp.* v. *Water Power & Control Comm.*, 257 App. Div. 590; *People ex rel. Freeborn & Co.* v. *Graves*, 257 App. Div. 587; *People ex rel. Bennett* v. *Laman*, 277 N. Y. 368; *Matter of Dr. Bloom Dentist, Inc.*, v. *Cruise*, 259 N. Y. 358; *Matter of Levine*, 210 App. Div. 8; *Matter of Springer*, 227 App. Div. 490; *Matter of Schleider*, 227 App. Div. 532; *Matter of Wohl*, 227 App. Div. 628; *Matter of Bovard*, 228 App. Div. 263; *Matter of Weinberger*, 259 App. Div. 592; *Matter of Deady*, 259 App. Div. 889.)

*Albert L. Solodar* for Allied Dental Council, Inc., *amicus curiæ.*
Rule 5 of the Rules of the Board of Regents was violated. (*Semler*
v. *Oregon State Board of Dental Examiners,* 148 Ore. 50; 294 U. S.
608; *Thompson* v. *Van Lear,* 77 Ark. 506; *Matter of Dr. Bloom
Dentist, Inc.,* v. *Cruise,* 259 N. Y. 358; *Cherubino* v. *Munan,* 253
N. Y. 462; *Matter of Mandel* v. *Board of Regents,* 250 N. Y. 173;
*Matter of Davis* v. *Sexton,* 211 App. Div. 233; *Red " C " Oil Mfg.
Co.* v. *Board of Agriculture,* 222 U. S. 380; *Matter of Bovard,* 228
App. Div. 263.)

LEHMAN, Ch. J. The appellant, Harry Cherry, was licensed in
1918 to practice dentistry in the State of New York. In October,
1940, he received notice that, upon charges preferred against him,
an application had been made to revoke his license to practice
dentistry, pursuant to the provisions of section 1311 of the Educa-
tion Law (Cons. Laws, ch. 16). A hearing was held, as provided
in that section, before the members of the Dental Board, having
" jurisdiction to hear all charges against duly licensed dentists of
this state for violation of the provisions of subdivision 2 of this
section."

The charge against the appellant was " unprofessional conduct "
in violation of subdivision 2 (h) of section 1311 of the Education
Law, committed as follows: " Between on or about October, 1937,
up to and including about August, 1939, respondent did make use of
and employ a certain dental credit agency as advertising solicitors
and free publicity press agents for the purpose of obtaining patients
for his dental practice, and during the aforesaid period, respondent
did, in fact, obtain as patients Ethel Scolnick, Louise Kroog,
Madeline Kannengeiser, Robert Buchholz, Charles Michael, Elinor
Isaacs and divers other persons, for his dental practice through the
use of the said advertising solicitors and free publicity press agents."

The Dental Board found that the appellant had committed
the *acts* specified in the charge and as a conclusion the Dental Board
found " that the charges against respondent have been sustained
and that he is guilty of unprofessional conduct in violation of section
1311, subdivision 2-h of the Education Law." The Dental Board
unanimously recommended " that respondent be reprimanded
and censured by reason of his misconduct as above found." The
Board stated in explanation, " This is the first violation of any of the

provisions of the Education Law by respondent. We are satisfied that respondent discontinued the practices complained of herein as soon as it was brought to his attention that these practices were considered objectionable and unprofessional." The Board of Regents accepted the determination of the members of the Dental Board that the appellant was guilty. It rejected the recommendation that the penalty be reprimand and censure. Instead it determined that the appellant should be suspended from practice for six months. The appellant brought proceedings under article 78 of the Civil Practice Act to set aside the determination of the Board of Regents. His application was granted at Special Term but upon appeal the Appellate Division reversed the order setting aside the determination of the Board of Regents and confirmed the determination.

The evidence presented at the hearing established the following facts: The owner of a clothing store conceived the plan of maintaining in the store a " dental credit service." Customers who, at the clothing store, applied for or were induced to accept the " dental credit service " were then sent, and at times escorted by clerks in the clothing store, to the office of a dentist who was asked to fix a price for which he would perform the required dental work. After the price was fixed the " dental credit service " agreed to discount the dentist's charge, paying to the dentist approximately seventy per cent of the charge. The appellant Cherry was one of the dentists who agreed to cooperate in this plan. In the course of two years he obtained about twenty-five patients by such means.

Section 51 of the Education Law provides, so far as material to the questions presented upon this appeal, that: " Conformably to law the regents may supervise the entrance regulations to and the licensing under and the practicing of the professions of medicine, dentistry, veterinary medicine, pharmacy, optometry and chiropody * * *." Section 1311, subdivision 2, of the Education Law provides: " The license and registration of a practitioner of dentistry may be revoked, suspended or annulled, or such practitioner reprimanded, censured or otherwise disciplined * * * upon decision and due hearing in any of the following cases: (a) * * *; (b) * * *; (c) * * *; (d) * * *; (e) * * *; (f) * * *; (g) that the dentist has advertised for patronage by

means of handbills, posters, circulars, stereopticon slides, motion pictures, radio or newspapers; (h) that the dentist has been otherwise or in any other way guilty of unprofessional conduct."

The order suspending the license of the appellant for six months must be annulled, unless upon the record here presented it appears that the Board of Regents had power to discipline the appellant for the cause specified in clause (h), " that the dentist has been otherwise or in any other way guilty of unprofessional conduct." Concededly he has not offended otherwise against the letter of the statute.

" That the State may regulate the practice of dentistry, prescribing the qualifications that are reasonably necessary, and to that end may require licenses and establish supervision by an administrative board, is not open to dispute." (*Semler* v. *Oregon State Board of Dental Examiners*, 294 U. S. 608, 611.) Exercising that power the Legislature may restrict the means of publicity and the form of advertising which a dentist may use. As the court said in the cited case, when the Legislature does that it is " not dealing with traders in commodities, but with the vital interest of public health, and with a profession treating bodily ills and demanding different standards of conduct from those which are traditional in the competition of the market place. The community is concerned with the maintenance of professional standards which will insure not only competency in individual practitioners, but protection against those who would prey upon a public peculiarly susceptible to imposition through alluring promises of physical relief. And the community is concerned in providing safeguards not only against deception, but against practices which would tend to demoralize the profession by forcing its members into an unseemly rivalry which would enlarge the opportunities of the least scrupulous." (p. 612.)

Acting pursuant to this well-recognized power the Legislature has, in section 1311, defined the " cases " where the license of a dentist may be revoked or suspended. In clauses (a) to (g) the Legislature has specified conduct and acts which, upon pain of loss of right to practice, are forbidden to a dentist. The conduct and acts banned are, for the most part so reprehensible that a dentist guilty of any of them would thereby demonstrate his unfitness to practice his profession, even though such conduct and acts were

not expressly prohibited.   Where the act might be considered only *malum prohibitum* the prohibited act is plainly defined in language which cannot be misunderstood.   Where a dentist has been charged with guilt of act or conduct which constitutes a ground specified by the Legislature in clauses (a) to (g) as sufficient to justify disqualification for practice, the evidence presented to sustain the charge may in some cases leave room for doubt and difference of opinion as to whether the accused has been guilty of the act or conduct charged. There can seldom be difference of opinion whether the act or conduct charged comes within the scope of these clauses.   That is not true where the charge is " unprofessional conduct."   That term, the appellant argues, is so vague that the Legislature in specifying that it may constitute sufficient ground for revocation or suspension of a license to practice has in effect delegated to the Board of Regents unfettered discretion to determine what shall be sufficient cause for disqualification of a dentist.

The Legislature, of course, could not grant to an administrative board or quasi-judicial tribunal power to impose such a penalty upon a dentist for act or conduct not defined in advance.   That would be contrary to our basic concepts of justice.   Nor could it delegate to the Board of Regents legislative power to define, in accordance with an unfettered discretion, the acts or conduct which, in the opinion of the Board, would justify disciplinary action against a dentist.

The Board of Regents does not claim a power so unlimited. It claims that whether act or conduct of an accused dentist is " unprofessional " may be determined by the standards recognized by the dental profession as " ethical " and that the Legislature may properly leave to a quasi-judicial body the task of ascertaining and applying those standards in a particular case.   It claims, also, that the Legislature has properly delegated to it power to define " ethical " professional standards and to adopt rules and regulations prohibiting acts or conduct which do not, in its opinion, conform to *such* standards, and that a violation by a dentist of a regulation so adopted is sufficient ground for discipline.

The Legislature has provided that, " Subject and in conformity to the constitution and laws of the state, the regents shall   *   *   * establish rules for carrying into effect the laws and policies of the

state, relating to education, and the functions, powers, duties and trusts conferred or charged upon the university and the education department." (Education Law, § 46.) Accordingly, the Board of Regents has adopted " regulations governing dental advertising." These regulations provide that: " In the administration of the law, the following forms of advertising are considered unprofessional and objectionable: (1) * * *, (2) * * *, (3) * * *, (4) * * *, (5) employing or making use of advertising solicitors or free publicity press agents, (6) * * *, (7) * * *." The professional misconduct charged against the appellant is, as we have said, that he employed the " dental credit agency as advertising solicitors and free publicity press agents for the purpose of obtaining patients " and that he did, in fact, obtain certain persons as patients *" through the use of the said advertising solicitors and free publicity press agents."* We have said that the Board of Regents' " specific supervisory powers over the practice of dentistry * * * enable it, within reasonable limits, to prescribe canons by which conduct deemed by it, in the exercise of fair judgment, to be unprofessional and objectionable may, in the interest of rescuing that profession from vulgar commercialism, be banned." *(Matter of Dr. Bloom Dentist, Inc.,* v. *Cruise,* 259 N. Y. 358, 363.) The field in which that power may be exercised is nonetheless subject to restriction by the Legislature, and even within the field in which the Legislature has delegated to the Board of Regents power to prescribe canons banning conduct which it deems unprofessional and objectionable, the Board of Regents cannot by the exercise of that power enlarge the causes for which the license of a dentist may be revoked or suspended, as defined in subdivision 2 of section 1311.

In its original form subdivision 2 of section 1311 (L. 1927, ch. 85) provided that: " Upon the report of the board to the department that the accused has been guilty of unprofessional or immoral conduct, or that he is grossly ignorant or inefficient in his profession, or of fraud or deceit in procuring admission to practice, the department may, without further hearing, suspend the person so charged from the practice of dentistry for a limited season, or may revoke his license." The statute in that form placed no restriction upon the means of publicity or the form of advertising which a dentist might use, but the Board of Regents adopted regulations declaring that

certain forms of advertising were improper and unprofessional. In our opinion in *Matter of Dr. Bloom Dentist, Inc.*, v. *Cruise* (259 N. Y. 358) we had these regulations in mind and what was there said has been properly construed as an approval by this court of the assumption of power by the Board of Regents to adopt appropriate regulations for such purpose under the statute then in effect.

Thereafter the Legislature amended section 1311 by chapter 609 of the Laws of 1933. As amended subdivision 2 then provided: " The license and registration of a practitioner of dentistry may be revoked, suspended or annulled, or such practitioner reprimanded, censured or otherwise disciplined in accordance with the provisions and procedure defined in this article upon decision and due hearing in any of the following cases: (a) that the dentist has been guilty of unprofessional or immoral conduct; (b) * * *; (c) * * *; (d) * * *; (e) * * *; (f) * * *; (g) that the dentist is guilty of untrue, fraudulent, misleading or deceptive advertising."

For the first time, in the statute as so amended the Legislature imposed a specific restriction upon the right of a dentist to advertise and declared that " untrue, fraudulent, misleading or deceptive advertising " was sufficient ground for revocation of an offending dentist's license. The regulations of the Board of Regents purported to impose more drastic restrictions. The bill which had been introduced in the Legislature defining the grounds for the revocation of a dentist's license included as an additional ground, " that the dentist has violated the rules of the regents governing advertising or any other rules." That ground was stricken out before the bill was passed. (See *Brown* v. *University of State of New York*, 242 App. Div. 85.)

In that case a dentist sought to enjoin the Board of Regents from enforcing a regulation banning " the employment of letters, hand bills, posters, circulars, cards, stereoptican slides, motion pictures, radio, newspapers or other advertising devices for the purpose of soliciting patronage, except that a dentist may use personal professional cards of a modest type announcing his name, title, address, telephone number and office hours." (p. 86.) Because the Legislature had undertaken to impose a specific restriction upon dental advertising, the Appellate Division and

this court (266 N. Y. 598) held that the Board of Regents could not adopt different or additional restrictions prohibiting the use of particular means of publicity and that the regulation of the Board of Regents was for that reason invalid. The court read into the statute imposing specific restrictions on advertising an implied sanction of advertising that did not violate the restrictions. Thereafter, the Legislature itself determined that the means of publicity which the Board of Regents had attempted to ban by regulation should, with some exceptions, be banned by statute, and amended subdivision 2 of section 1311 accordingly. (L. 1935, ch. 406.)

It should be noted that in *Brown* v. *University of State of New York* (*supra*) the courts did not hold that the challenged rule or regulation of the Board of Regents was unreasonable. We did not question that, in the exercise of the police power, the State could place such a restriction upon dental advertising. We held that the regulation of the Board of Regents was invalid only because the Legislature, having itself fixed a standard for dental advertising and having provided that failure to abide by *such* standard was ground for revocation of a license, had by necessary implication sanctioned advertising which did not transgress the express ban of the statute, and had not delegated to the Board of Regents power to provide other standards of permissible advertising or to create additional grounds for revocation of license. Though the Legislature has thereafter by amendment of the statute placed a ban upon the use of some of the *means* of advertising which the Board of Regents had attempted to ban by regulation, the ban is not complete. Publicity or advertising by other *means* is still sanctioned by the statute. The reasons which dictated the decision in *Brown* v. *University of State of New York* (*supra*), would, with even more compelling force, constrain the courts to declare invalid any assumption by the Board of Regents to ban by rule or regulation such other means of publicity or advertising.

That does not mean, however, that a dentist may, with impunity, use means of publicity and advertising, though sanctioned by the Legislature, for a purpose or in a manner which is unlawful, or perhaps even improper. The legislative ban includes almost all means which are generally used for publicity or in advertising.

By necessary implication it sanctions the use of other means of publicity but by no possible implication does it sanction the use of the permitted means for a purpose or in a manner which would constitute unprofessional conduct.

What constitutes unprofessional conduct by a dentist must be determined by those standards which are commonly accepted by those practicing the same profession in the same territory. The law is a very ancient profession and certain forms of conduct have been banned as unprofessional for centuries in both England and America. Ancient traditions have created rigid bans and by common consent those who violate those bans should be excluded from the goodly company of the members of the bar. At least in part these bans have been formulated in Canons of Ethics adopted and enforced by associations of members of the bar. In the profession of the law no person can plead ignorance as palliation for professional misconduct. In vocations, like dentistry, more recently accepted as professions, professional standards are perhaps less uniform, less well understood, and less rigidly defined. Nonetheless, the standards of conduct generally accepted by practitioners in the State of New York are not so indefinite that they cannot be determined by qualified persons. They are part of the ethics of the profession and " what is generally called the ' ethics ' of the profession is but the consensus of expert opinion as to the necessity of such standards." (*Semler* v. *Oregon State Board of Dental Examiners, supra*, p. 612.) Every member of the profession should be regarded as an expert for such purpose. There is a moral dereliction in failure by any member of a profession to apply in professional practice the standards which, by consensus of opinion in the profession, are necessary.

The Board of Regents cannot, as we have said, suspend or revoke the license of a dentist for any cause not specified in section 1311, subdivision 2. It cannot ban, as unprofessional, conduct which has been impliedly sanctioned by the Legislature. Nor can it by regulation ban, as unprofessional, conduct which, though not expressly or impliedly sanctioned by the Legislature, accords with the standards accepted as proper by the " consensus of expert opinion." Even so there remains a large field in which the Board of Regents may by the exercise of its specific supervisory power " prescribe

canons by which conduct deemed by it, in the exercise of fair judgment, to be unprofessional and objectionable " is banned. (*Matter of Dr. Bloom Dentist, Inc.*, v. *Cruise, supra*, p. 363.) Though breach of a regulation or canon prescribed by the Board of Regents is not of itself, and in all cases, sufficient ground for discipline, it may be sufficient if the regulation or canon is reasonable and the conduct which has been specifically banned by the regulation may fairly be classed as unprofessional. In such case the regulation serves to apprise all practitioners of the standards which the official body authorized to supervise the profession deems necessary, and those who choose to disregard the warning do so at their peril. In adopting such a regulation the Board of Regents does not exercise a legislative power delegated to it without mandate that it be exercised in accordance with the standards fixed by the Legislature. The powers conferred upon the Board of Regents to supervise the practice of dentistry and to establish rules for carrying into effect its powers and functions are subject to the plainly implied condition that in the exercise of its power the Board may ban only acts and conduct which, upon reasonable ground, it deems unprofessional. The Legislature has, itself, specified the grounds upon which a license to practice dentistry may be suspended or revoked. The Legislature has not delegated to the Board of Regents power to create offenses which shall furnish additional grounds. The Legislature has restricted the *means* which a dentist may use for publicity or advertising. It has not delegated to the Board of Regents power to ban the use of *means* which do not violate the restriction formulated by the Legislature. The Legislature has not delegated to the Board power to define as " unprofessional " conduct which, by the " consensus of expert opinion " is " ethical " and not reprehensible. The Legislature has, however, delegated to the Board power by rule to specify and define conduct which by consensus of expert opinion in the profession is unethical and does not conform to standards which are necessary, and power to decree that such reprehensible conduct should not go unwhipt of justice. Through the exercise of that power it can adequately supervise the practice of dentistry and ban conduct dictated by " vulgar commercialism."

The rule that the " employing or making use of advertising solicitors or free publicity press agents " constitutes unprofessional conduct may be invalid under the case of *Brown* v. *University of State of New York* (*supra*), if rigidly applied as a ban in all cases. Advertising solicitors and free publicity press agents are ordinarily employed and used for a purpose and in manner which would be regarded as unprofessional and improper, even if not specifically banned by regulation. As we have said, the statute cannot be construed as an implied sanction of such employment or use. Nonetheless, there may be occasions when advertising solicitors or free publicity press agents may be employed or used for proper purposes and in proper manner; and the Board of Regents could not by general regulation ban proper use and improper use indiscriminately.

It may well be doubted whether in this case it can fairly be said that the petitioner, though obtaining patients in the manner above-described through the " dental credit service," did in fact employ or make use of " advertising solicitors or free publicity press agents " within the meaning of the regulation. We need not decide that now. The only charge against the petitioner is a violation of the ban against employment and use of advertising solicitors and free publicity agents, and that is the only act or conduct of which the petitioner has been found guilty; yet, as we have said, violation of that regulation is not by itself a ground for revocation of a license to practice dentistry. Cooperation by the petitioner in the plan of the so-called " dental credit service " might well be subject to censure as " vulgar commercialism " and we assume that it could be banned by regulation of the Board of Regents, and might be regarded as unprofessional conduct even without such a regulation. That is not, however, the charge which has been tried by the Dental Board. Indeed, we cannot overlook the fact that in its recommendation that Board stated, " We are satisfied that respondent discontinued the practices complained of herein as soon as it was brought to his attention that these practices were considered objectionable and unprofessional." In effect, that is a finding that the petitioner acted without wrongful intent and in the belief that his conduct was not " objectionable and unprofessional." Quite evidently the Dental Board found a wrong which, in its opinion, was only technical and at least partly venial.

Since the conduct charged here as " unprofessional " is not of itself a ground for suspension of license, the order of the Appellate Division should be reversed and that of the Special Term affirmed, with costs in this court and in the Appellate Division.

LOUGHRAN, RIPPEY and DESMOND, JJ., concur; FINCH, LEWIS and CONWAY, JJ., dissent.

Ordered accordingly.