In the Matter of JOHN M. DUBIN, Petitioner, against BOARD OF REGENTS OF THE STATE OF NEW YORK, Respondent.

Third Department, May 11, 1955.

Osmond K. Fraenkel, Irwin Karp and Sidney H. Asch for petitioner.

Jacob K. Javits, Attorney-General (Robert W. Bush and Henry S. Manley of counsel), for respondent.

HALPERN, J. The petitioner has been suspended from the practice of optometry for a period of one year by the Board of Regents upon a finding that he was guilty of unprofessional conduct (a) in authorizing the distribution of advertising matter containing reference to the cost of glasses and optometric services and (b) in offering discounts or inducements in connection with his practice.

The case is before us in a proceeding under article 78 to review the determination of the Board of Regents. The facts are virtually undisputed, although there are some differences between the parties as to the inferences to be drawn from the facts. The petitioner entered into an arrangement with Republic Lodge 1987 of the International Association of Machinists of the American Federation of Labor under which he agreed to furnish optometric and optical services to union members and their families at." low cost ". The proof established that it was contemplated that the prices charged to the union members would be lower than those charged to the general public. The union mailed a circular letter to its members which explained that the union had adopted a low cost optical plan and had selected the petitioner to serve its membership and advised the members that they could

" avail themselves of the beneficial advantages of this Union Low Cost Optical Plan at either of Dr. Dubin's two established offices ". Enclosed in the letters were " Optical Plan Membership Cards " to identify the members in applying for the optical service. The form of the letter was approved by the petitioner and it was sent out with his consent.

It was also established by the proof that the arrangement had been carried out and that the union members and their families had been given substantial discounts by the petitioner, upon presentation of the optical plan membership cards.

The petitioner was charged " with fraud, deceit and misrepresentation in the practice of optometry and with unprofessional conduct in the practice of optometry, within the purview and meaning of Section 7108, subdivision 1 of the Education Law of the State of New York, and of the Rules of the Board of Regents " in that he had permitted to be distributed and circularized the " cards and literature " described above and " That pursuant to the aforesaid plan respondent did cause and permitted to be advertised matter which contained reference to cost of optometric services, lenses, glasses, frames, etc. and did offer discounts or inducements to prospective patrons ".

A hearing was held upon these charges by the Board of Examiners in Optometry. The petitioner appeared in person and was represented by counsel. Upon the hearing, there was no real controversy as to the conduct of the petitioner nor was there any question as to its unprofessional nature. The petitioner interposed two " pleas in mitigation ", the first, that he had relied in good faith upon the advice of an attorney who had advised him, after studying the matter, that his participation in the plan was permissible and the second, that the plan had been terminated before the date upon which the charges had been brought. These matters were offered as bearing upon the extent of the discipline to be imposed, rather than upon the merits of the charge. They were countered by proof offered by the assistant attorney-general that the petitioner had been warned upon a previous occasion concerning participation in a plan with another union under which a schedule of prices had been advertised and that he had promised not to re-engage in the practice. The board found that the charges had been " sustained by sufficient legal evidence " and recommended that the petitioner's license be suspended for one year. The Regents Committee on Discipline upheld this recommendation and thereafter the Board of Regents accepted and sustained the determination and accordingly suspended the petitioner's license for a period of one year.

In this proceeding to review the board's determination, the principal attack is upon the validity of the rules of the Board of Regents which define unprofessional conduct in the practice of optometry.

The regulations were promulgated by the Commissioner of Education, with the approval of the Board of Regents in 1942, pursuant to section 46 of the Education Law (now Education Law, § 207). They read in part as follows:

" Article 8 — Optometry

" § 70 Definitions. 1. *Unprofessional conduct, fraud and deceit.* Unprofessional conduct, fraud, deceit or misrepresentation in the practice of optometry under sections 7108 and 7111 of the Education Law shall include but shall not be limited to the following: * * *

" (f) Advertising of any character which includes or contains any price whatsoever or any reference thereto, or any reference to cost whether related to the examination or to the cost or price of lenses, glasses, frames, mountings or any other optometric services, article or device necessary for the patient. * * *

" (h) Offering for free examination or other gratuitous services, bonuses, premiums, discounts or any other inducements." (N. Y. Official Compilation of Codes, Rules & Regulations, Vol. 1, pp. 632–633, as relettered in 1950, Sixth Official Supp., p. 140.)

The statutory authority for these regulations is stated in the Official Compilation to be section 207 (formerly § 46) of the Education Law. This section authorizes the Board of Regents " Subject and in conformity to the constitution and laws of the state " to " establish rules for carrying into effect the laws and policies of the state, relating to education, and the functions, powers, duties and trusts conferred or charged upon the university and the education department ". Statutory authority for the rules may also be found in section 211 (formerly § 51) of the Education Law authorizing the Regents to supervise the professions, including the profession of optometry. The grant of power to supervise carries with it the power to adopt appropriate rules and regulations.

There is also specific authority to adopt rules regulating advertising in the practice of optometry in section 7111 (formerly § 1433) of the Education Law. The statute provides that " No person shall * * * advertise the practice of optometry in violation of rules to be made by the department."

Subdivision 1 of section 7108 (formerly § 1432) of the Education Law governs the discipline of optometrists. It reads in

part as follows: "The department shall have power to revoke the license, certificate of registration or certificate of exemption of any optometrist upon proof that the holder thereof has been guilty of unprofessional conduct, or of any fraud, deceit or misrepresentation in his practice or in his advertising".

It will be noted that the charges against the petitioner accuse him of unprofessional conduct in the practice of optometry under the statute (§ 7108, subd. 1), as well as under the Rules of the Board of Regents.

The finding by the board may be regarded as a finding of unprofessional conduct in violation of the statute and, from this standpoint, it may be argued that the validity of the rules is not involved in this case. Discipline may be imposed for conduct of an unprofessional character in violation of the statute, even though the conduct is not covered by any specific rules (*Matter of Bell* v. *Board of Regents,* 295 N. Y. 101). However, it must be recognized that the hearing was held, and the determination was made, in the light of the rules defining unprofessional conduct and there is no independent determination by the board that the acts of which the petitioner was found guilty constituted unprofessional conduct, according to the standards prevailing in the profession, apart from the definition in the rules. Therefore, if the rules were held to be invalid, the case would have to be remitted for a *de novo* consideration of the discipline of the petitioner under the principle of the *Bell* case. The question of the validity of the rules is therefore necessarily involved in this proceeding.

This question is not a new one. In the case of *Finlay Straus, Inc.,* v. *University of State of N. Y.* (186 Misc. 242, affd. 270 App. Div. 1060, motion for leave to appeal denied 296 N. Y. 1057), the precise rules here involved were fully considered and were found to be valid. The plaintiffs in that case, the owners of retail stores in which optometrists were employed, sought a declaratory judgment that subdivisions (f) and (h) (the latter of which was then lettered [g]) of section 70 of the regulations were beyond the power of the Regents and were invalid. After a full trial, judgment was granted for the defendants upholding the regulations (186 Misc. 242). This was affirmed by the Appellate Division in a memorandum opinion (270 App. Div. 1060) and a motion for leave to appeal was denied by the Court of Appeals (296 N. Y. 1057). While the *Finlay Straus* case was not a discipline case, the judgment held the rules to be valid for all purposes and this necessarily upheld their use as the basis for a disciplinary proceeding. As a matter of fact, as

appears from the text of the rules quoted above, the subject of advertising and that of the offering of discounts are dealt with in the rules only as part of the definition of unprofessional conduct, which is the basis of a disciplinary proceeding under section 7108 of the Education Law.

An examination of the record and briefs in the *Finlay Straus* case discloses that the very grounds upon which the petitioner here attacks the regulations were pressed upon the courts in that case. Unfortunately, both the trial court and this court rejected those grounds of attack *sub silentio* and, as a result, the petitioner's counsel has argued them here as if they were novel points not heretofore passed upon by the courts. The plaintiffs-appellants in the *Finlay Straus* case complained in their brief in this court that the trial court had not in its opinion dealt explicitly with the principal grounds of attack advanced by them and they then complained in their application for leave to appeal to the Court of Appeals that this court had not dealt with those grounds in its opinion. As appears from the briefs of the plaintiffs in the *Finlay Straus* case, the grounds of attack were identical with those urged by the petitioner in this case.

The authority of the *Finlay Straus* case with respect to points actually raised and passed upon is in no way impaired by the failure of the courts to refer to them explicitly in their opinions. However, in view of the importance of the question, it may be desirable to review the grounds of attack and to spell out explicitly the reasoning which led to their rejection.

The petitioner argues (as the plaintiffs in the *Finlay Straus* case did) that, since section 7108 of the Education Law specifically prohibits fraudulent advertising only, there is a necessary implication that all other kinds of advertising are permitted and therefore the Board of Regents is without power to adopt a rule declaring any kind of nonfraudulent advertising to be unprofessional conduct. Two cases lie at the foundation of this line of argument (*Brown* v. *University of State of N. Y.*, 242 App. Div. 85, affd. 266 N. Y. 598; *Matter of Cherry* v. *Board of Regents*, 289 N. Y. 148). In the *Brown* case, a dentist sought to enjoin the Board of Regents from enforcing a regulation banning the use of any " advertising devices for the purpose of soliciting patronage ". Section 1311 of the Education Law as it then read (L. 1933, ch. 609) provided that a practitioner of dentistry might be disciplined, if he was guilty of " untrue, fraudulent, misleading or deceptive advertising ". This court and the Court of Appeals held that the Board of Regents had no power to forbid all advertising by rule in view of the restricted statutory

provision forbidding only fraudulent advertising. The doctrine of the *Brown* case was clarified and limited in the *Cherry* case. That case arose after the Legislature had by amendment of the statute placed a ban upon advertising " for patronage by means of handbills, posters, circulars, stereopticon slides, motion pictures, radio or newspapers " (§ 1311, subd. 2; L. 1935, ch. 406). The Board of Regents thereafter adopted a regulation governing dental advertising in which it prohibited, among other things, the " employing or making use of advertising solicitors or free publicity press agents ". Again it was held that the regulations had gone beyond the prohibition contained in the statute and had undertaken to forbid a type of advertising which had been impliedly sanctioned by the Legislature. But the court pointed out that " That does not mean, however, that a dentist may, with impunity, use means of publicity and advertising, though sanctioned by the Legislature, for a purpose or in a manner which is unlawful, or perhaps even improper " (p. 157). " By necessary implication it sanctions the use of other means of publicity but by no possible implication does it sanction the use of the permitted means for a purpose or in a manner which would constitute unprofessional conduct " (p. 158). The court nevertheless held that the regulation forbidding the use of advertising solicitors or free publicity press agents was invalid because, it held, " there may be occasions when advertising solicitors or free publicity press agents may be employed or used for proper purposes and in proper manner; and the Board of Regents could not by general regulation ban proper use and improper use indiscriminately " (p. 160).

It thus appears that in the *Cherry* case the regulation was held invalid because it prohibited a type of advertising activity which would not, under all circumstances, constitute unprofessional conduct.

The *Brown* and *Cherry* cases, thus analyzed, do not support the petitioner's position. The rule here in question does not forbid advertising *in toto,* as the rule involved in the *Brown* case did. It only forbids a type of advertising which, by the standards accepted by, and prevailing in, the profession, constitutes professional misconduct. It was amply proved upon the trial in the *Finlay Straus* case that any advertisement which refers to cost or price in the advertising of professional optometric services and any offering of free examinations or discounts as an inducement are, according to the consensus of the profession, improper and unprofessional. The rule here in question does not, like the rule held invalid in the *Cherry* case, " ban

proper use and improper use indiscriminately ''. It bans only a type of advertising which, by reason of its nature and content, necessarily constitutes unprofessional conduct. When the *Brown* case and the *Cherry* case are read together, we derive from them the principle that a statutory prohibition of fraud in advertising recognizes, by necessary implication, the propriety of some kind of advertising but it does not by necessary implication sanction advertising in a form or manner which, according to accepted professional standards, is improper or unprofessional.

It should be borne in mind that the petitioner does not attack the reasonableness of the rule as expressing the accepted professional standard. The reasonableness of the rule is hardly open to question. The recent statement by the United States Supreme Court in *Williamson* v. *Lee Opt. Co.* (348 U. S. 483, 490) is apposite: '' We see no constitutional reason why a State may not treat all who deal with the human eye as members of a profession who should use no merchandising methods for obtaining customers.'' As we have seen, the petitioner attacks the rule solely upon the narrow legal ground that it is in conflict with a necessary implication to be drawn from the statutory prohibition of fraudulent advertising. This attack was rejected in the *Finlay Straus* case (*supra*) and it is rejected by us again now.

A subsidiary question is raised by the petitioner as to whether the proof established a violation of the rules. The consideration of this question is, of course, governed by the general principle that the decision of an administrative agency on questions of fact is final, if it is supported by substantial evidence. We find ample evidence in the record to sustain the finding that the petitioner engaged in unprofessional conduct in violation of the rules. The only point raised in this connection which warrants discussion is the claim that the letter sent out by the union did not constitute an advertisement referring to cost. The letter referred to a low cost plan and to beneficial advantages to be derived from the use of the plan by the members of the union. This, in our opinion, constituted a reference to cost within the meaning of the rule.

There is a reference at one point in the petitioner's brief to the growing popularity of low cost medical and dental plans and the widespread advertising used in connection with them. The methods of operation of the plans referred to have been authorized by statute (Insurance Law, art. IX-c). Professional practitioners have apparently found it possible to participate in those

plans in a manner which is consistent with accepted standards of professional conduct and with the statutes and the rules of the Board of Regents. The petitioner's conduct is not analogous to that of professional practitioners co-operating with health insurance plans. The petitioner actively participated in an advertising scheme which offered reduced prices in his name, as part of his own professional practice. The board's determination that this method of operation is in violation of the statute and the rules is well within the ambit of the board's power. The imposition of discipline upon the petitioner must therefore be sustained.

The determination of the Board of Regents should be confirmed, without costs.

FOSTER, P. J., BERGAN, COON and IMRIE, JJ., concur.

Determination of the Board of Regents confirmed, without costs.