Conway, Ch. J.
Appellant, a licensed optometrist, was “ charged with fraud, deceit and misrepresentation in the practice of optometry and with unprofessional conduct in the practice of optometry, within the purview and meaning of Section 7108, subdivision 1 of the Education Law of the State of New York, and of the Rules of the Board of Regents of the University of the State of New York pertaining to the practice of optometry in that:
* ‘ Heretofore and on or about and between March 1, 1954 and May 15, 1954, as well as for a period of time prior and subsequent thereto, respondent [appellant here] did cause and/or did permit to be printed, issued, distributed and circularized, certain cards and literature, which, amongst other things, set forth representations as follows:
*61 1 ‘ It was represented that the respondent had joined in and become a party to a ‘ Low Cost Optical Plan sponsored by Republic Lodge 1987, of the International Association of Machinists of the A. F. of L. and that the members of the aforesaid Union Avould be entitled to claim and receive ¡ benefits ’ upon presentation to the respondent of the Union’s ‘ Optical Plan Membership Card ’, upon Avhich card respondent’s name was imprinted. That pursuant to the aforesaid plan the respondent did cause and permitted to be advertised matter which contained reference to cost of optometric services, lenses, glasses, frames, etc. and did offer discounts or inducements to prospective patrons. ’ ’
The form of the circular letters sent out to the union members Avas approved by the appellant after he had consulted with his attorney as to the propriety of the plan in the light of the Board of Regents’ Rules governing optometrists and was sent out by the president of the union with the appellant’s consent.
After a hearing, the board of examiners in optometry concluded that the circular letters “ contained advertising matter of a character which made reference to cost of glasses and Optometric services”; that 11 respondent did offer discounts or inducements in connection with his practice of Optometry ” and that appellant’s conduct “ was highly unprofessional and constituted fraud, deceit and misrepresentation in the practice of Optometry under the provision of Section 7108, subdivision 1 of the Education LaAv as defined in the rules of the Board of Regents of the University of the State of New York governing the practice of Optometry ” (emphasis supplied) and recommended that the appellant’s license be suspended for one year. The Regents Committee on Discipline upheld the recommendation ; the Board of Regents sustained the committee’s determination and the Appellate Division confirmed the decision of the board.
No serious contention is now made that appellant was guilty of any fraud, deceit or misrepresentation.
The applicable regulations, adopted by the Commissioner of Education Avith the approval of the Board of Regents, provide:
“ § 70. Definitions.
“ 1. Unprofessional conduct, fraud and deceit. Unprofessional conduct, fraud, deceit or misrepresentation in the practice of optometry under sections [7108 and 7111] of the Education *62 Law shall include but shall not be limited to the following: * * *
“ (f) Advertising of any character which includes or contains any price whatsoever or any reference thereto, or any reference to cost whether related to the examination or to the cost or price of lenses, glasses, frames, mountings or any other optometric services, article or device necessary for the patient. * * *
“ (h) Offering for free examination or other gratuitous services, bonuses, premiums, discounts or any other inducements.” (N. Y. Official Compilation of Codes, Bules & Regulations, Vol. 1, pp. 632-633, as relettered in 1950, Sixth Official Supp., p. 140.)
The power of the commissioner to adopt such rules is necessarily limited by subdivision 1 of section 7108 (formerly § 1432) of the Education Law, which states that the Department of Education shall have power to take disciplinary action against holders of licenses to practice optometry ‘ ‘ upon proof that the holder thereof has been guilty of unprofessional conduct, or of any fraud, deceit or misrepresentation in his practice or in his advertising * * *.” This statute necessarily qualifies and limits the general rule-making power conferred by section 211 (formerly § 51) and section 7111 (formerly § 1433) of the Education Law, and implies that not all advertising is unprofessional. That is, the Education Law impliedly permits some advertising by prohibiting only those types constituting “ unprofessional conduct ” or of fraud, deceit or misrepresentation. (Matter of Cherry v. Board of Regents, 289 N. Y. 148.)
In the present case it cannot be said that the type of advertising engaged in by the petitioner constituted unprofessional conduct in the practice of optometry as a matter of law and there is no proof in the case to the effect that the accepted professional standards of optometry condemn the type of advertising herein involved. That being so, we are constrained to rule that the holding of the Board of Regents is arbitrary and must be annulled.
Nothing decided in Finlay Straus, Inc., v. University of State of N. Y. (270 App. Div. 1060, motion for leave to appeal denied 296 N. Y. 1057) militates against this result. There, the plaintiffs sought a declaratory judgment that the rules of the Board of Regents with respect to prices, advertising and unprofessional conduct of optometrists were beyond the power of the Regents *63 and invalid. The plaintiffs, who were owners of retail stores, employed optometrists to make eye examinations and prescribe glasses. No charge was made unless glasses were prescribed. Since a fee was obtainable only if glasses were purchased, that case presented a situation of grave danger to the public of biased diagnoses. The Appellate Division recognized that when it wrote: “ The rules seek to prevent an employer of optometrists from making sales dependent on the recommendation of the employed optometrists where the price of spectacles includes an examination and is dependent on an examination to be made without cost or obligation to the purchaser. It is no answer to say that the examination will be honest. The rules aim at preventing a practice which may result in added expense to the unsuspecting customer. Authority exists for the enactment of the rules. The rules are reasonable and are enacted for the protection of the public.” (270 App. Div. 1061.) The Appellate Division merely held that the rules of the board were valid insofar as they were aimed at preventing the practice engaged in by Finlay Straus.
The order of the Appellate Division should be reversed, and the determination of the Board of Regents annulled, with costs in this court and in the Appellate Division.
Desmond, Dye, Fuld, Van Voorhis and Burke, JJ., concur ; Froessel, J., taking no part.
Order reversed, etc.