IRVING STRAUSS et al., on Behalf of Themselves and All Others in the State of New York Similarly Situated, Appellants, *v.* UNIVERSITY OF THE STATE OF NEW YORK et al., Respondents.

Third Department, July 10, 1956.

*Frank E. Behrman* for appellants.

*Charles A. Brind, Jr., John P. Jehu, Elizabeth M. Eastman* and *George B. Farrington* for respondents.

*Harold Kohn* for New York State Optometric Association, *amicus curiæ.*

BERGAN, J. P. This is an action by five registered optometrists against the University of the State of New York, the Board of Regents, and the members of the State Board of Examiners in Optometry for a declaratory judgment invalidating a regulation governing the practice of optometry in New York and seeking incidental injunctive relief against the defendants. The case was tried before Judge HEFFERNAN who, as Official Referee, sustained the regulation and granted judgment for the defendants.

The case was here on an earlier appeal by defendants in a test of the sufficiency of the complaint (280 App. Div. 1017); and it was held, conformably with the practice announced in *Rockland Light & Power Co.* v. *City of New York* (289 N. Y. 45), that a cause of action for a declaratory judgment was stated in the complaint which sufficiently pleaded a justiciable issue; that even though it might be ultimately determined on the merits that defendants were right about the controversy, the decision could not be reached by attacking the sufficiency of the complaint.

The powers of the Regents in respect of the practice of optometry as a profession are set in a statutory frame. There is, first of all, a general duty to supervise the practice (Education Law, § 211). Besides this, there is a grant of power to the Education Department to revoke the license of an optometrist for "unprofessional conduct" (§ 7108, subd. 1). There is a direct statutory prohibition against advertising "the practice of optometry in violation of rules to be made by the department" (§ 7111, subd. 1).

The regulation which has been adopted by the Regents which plaintiffs attack defines as unprofessional conduct "Advertising by means of large display, glaring, illuminated or flickering signs". An illuminated sign is defined as meaning "a sign lighted or self-luminous by any means whatever, or giving the outward appearance of same." The use in advertising of representations of the human head or eye or of spectacles also is prohibited by the regulation.

When a statute prohibits in absolute terms advertising by members of a profession in violation of the rules of the department governing advertising, it would seem to follow that a violation of such a rule could readily be treated as "unprofessional conduct" for which the department might revoke a license under its additional statutory powers and in consonance with its general duty to supervise the practice of the profession. It seems reasonable to think that the violation of a rule made in pursuance of a statute in respect of unprofessional advertising could itself be found to be unprofessional conduct.

The record here is not open to the infirmities found in the record in *Matter of Cherry* v. *Board of Regents* (289 N. Y. 148). The court there held that because the Legislature had expressly prohibited some forms of advertising by dentists it had by implication sanctioned other forms of advertising.

Here there is no such duality between a form prohibited and a form permitted by implication; there is, rather, a broad delegation of rule-making power to the public agency which supervises the profession. Such supervision is, indeed, not meaningful in the absence of a power to lay down rules. Such a power would exist from implication if the Legislature had not chosen to express it.

But even as to those forms of advertising which in the *Cherry* case were deemed permitted by implication, the court sanctioned the treatment of advertising as unprofessional conduct when it would be regarded as in violation of the "standards which are commonly accepted by those practicing the same profession in the same territory" (p. 158), even though the statute itself did not set up such a standard. Upon that record in which there was a failure to show that the advertising complained of itself, and independently of statute, fell within the range of unprofessional conduct, the statute was treated as the controlling guide of power and it was read to imply an absence rather than the presence of such power.

The rule-making power of the department in respect of advertising in optometry is not, of course, unlimited. Rules importing arbitrary standards of advertising having no rational relevancy to professional needs or policy could not be laid down. But the Education Law sections cannot be read in context without seeing in them a grant of control over professional advertising given to the department by the Legislature.

We have here a public agency which by one section of the statute is given the power to supervise a profession; and a profession which by another section of the same statute is required by the Legislature to keep its advertising practices consistent with the rules of the same public agency which supervises it.

It was decided in *Matter of Dubin* v. *Board of Regents* (1 N Y 2d 58) that the regulation prohibiting price advertising and free examinations was arbitrary and it was stricken down because of this in the absence of proof in that record that those advertising practices were condemned under " accepted professional standards of optometry " (p. 62).

Because of the absence of such proof, the court felt unable to say " as a matter of law " that the type of advertising considered was " unprofessional conduct ". The effect of this rationale was to hold conversely as a matter of law that the regulation of the department prohibiting such price advertising and advertising free examinations was arbitrary and should be annulled.

But we do not read this decision to hold either that all regulations of the department restricting advertising are arbitrary because some advertising seems permitted by implication in the statute; or that even the regulation condemned by the court on that record would be deemed arbitrary if on another record it were shown that these advertising practices were disapproved under accepted professional standards. Of course, it is true that the Legislature seems by implication to have left open some forms of advertising to optometrists; but those left open are by equally clear language subjected to regulation by the department.

The proof in this record that advertising of the type prohibited by the regulation is regarded by the profession of optometry as unprofessional is quite adequate; and, indeed, it is not factually disputed by the plaintiffs. The president of the New York State Optometric Association, for example, swore that " The regulation was issued at optometry's request " and that it required almost two years of negotiation with the Regents and the department " to arrive at a suitable regulation ".

He gave as an example of the view of the profession the 1947 resolution adopted by the State association that " the display

of glaring or illuminated signs '' or signs depicting the human eye or spectacles or signs exceeding certain sizes '' be discouraged ''. He cited a resolution of the following year specifically requesting the Regents to promulgate a rule defining as unprofessional conduct the use of large, glaring or flickering signs; and in 1950 the association by formal resolution approved steps taken by the Regents at the request of the association toward elimination of '' illuminated signs ''.

He also swore that there was a full hearing and full opportunity afforded the profession to express its view before the Regents and he flatly stated that '' this regulation represents the wishes of a majority of the optometrists in this State''. There was other adequate proof in this direction which the Judge who tried the case and granted the judgment was warranted in treating as giving support to the general professional acceptance of this regulation as a fair standard for the reasonable regulation of optometry.

The New York State Optometric Association in its brief as *amicus curiæ* gives strong indorsement to the regulation and treats it as entirely reasonable and in accordance with professional opinion. It asks that the judgment be affirmed. There is no proof of any substantial professional support for plaintiffs' contention or that it is a view held by the leaders, the teachers, or the journals of the profession.

In effect plaintiffs argue, aside from the point that the Regents had not the statutory power to enact the regulation, that it discriminates against this profession because opticians and oculists are allowed to practice under regulations which plaintiffs regard as less burdensome. But this, so it seems to us, is a matter to be settled within a profession. Each profession has its own intramural problems as well as its own aspirations which require special treatment according to its special needs. This kind of difference is not '' discrimination '' in any constitutional or legal sense.

The main burden of plaintiffs' quarrel with the regulation is that the prohibition against all illuminated signs goes too far. But that, too, is a matter of professional judgment and for evaluation by the public agency which has the statutory power to regulate advertising. That a man who regards himself as the practitioner of a profession takes with its privileges also

the professionally self-imposed restraint of not showing himself to the public by illuminated signs, does not seem to us to be shocking; nor is it intolerable to think that while some physicians might have a light behind their name-sign in a window at night, that the practitioners of this younger and newer profession of optometry may not have the same thing.

It is certainly no answer to the reasonableness of a regulation prohibiting any illuminated advertising to say that the medical profession, which sanctions no advertising, does not regard the light behind the physician's name-sign in his window as unprofessional advertising. The medical profession is not plagued by the effect on its professional stature of blatant advertising; the profession of optometry is, and the concern and apprehension of the leaders of this profession over its advertising practice is widespread.

What is a restrained or subdued or dignified lighted sign can be, and has been in this context, a matter of constant dispute. If it seems to the profession, to its responsible leaders, and to the department that the best thing is to stop all illuminated advertising, we ought not as a court to interfere because we think the regulation should be different. We have no ground to think we could do this better if we had the responsibility. We do not have that responsibility; and when we see that the power is exercised within the frame of the statute we strike the boundary of our authority.

It will be seen, moreover, that what plaintiffs have in mind in arguing for illuminated signs is not such a small sign as a physician might put in his window; it is rather the kind of sign that will be able to compete with bold and obtrusive public advertising.

The testimony of one of the plaintiffs affords an interesting commentary of what plaintiffs want to be allowed to do. "My place of business", he says, is located in "a highly commercial and high rental location where I am completely surrounded by establishments using large, flickering, highly illuminated and neon signs" and "for my own self-preservation I require bright or attractive signs in order to indicate my presence at that location". This is an argument which looks for a judgment of the court in disregard of the current of professional opinion established without any dispute in this record.

The attack of the plaintiff on the regulation is not a single case of actual discipline but a total challenge of the regulation on a broad front. We see no ground to dissect the regulation or to attempt to write out a better formulation in some details than the profession itself has done and which the department has carried out in response to professional recommendation. Such dissection and particularism is neither within our judicial function, nor within our competence.

The judgment should be affirmed, with costs.

HALPERN, J. (concurring in part and dissenting in part). My approach to this case is somewhat different from that of Justice BERGAN. I start with the premise that the rule-making power of the Board of Regents with respect to advertising by optometrists is a very restricted one. Its rules in that area may only reflect and articulate the existing standards of the profession. The board may not forbid a type of advertising which is not condemned by accepted professional standards, even though it believes it to be objectionable. This limitation upon the board's rule-making power results from the fact that the statute regulating the profession has been construed as sanctioning advertising by members of the profession, excepting only such as is prohibited by the statute (*Matter of Dubin* v. *Board of Regents,* 1 N Y 2d 58; *Matter of Cherry* v. *Board of Regents,* 289 N. Y. 148). Section 7108 of the Education Law, authorizing disciplinary action upon proof " of unprofessional conduct, or of any fraud, deceit or misrepresentation in his practice or in his advertising " has been construed as impliedly permitting " some advertising by prohibiting only those types constituting ' unprofessional conduct ' or fraud, deceit or misrepresentation " (*Matter of Dubin* v. *Board of Regents, supra,* p. 62).*

---

* In the *Dubin* case, the petitioner contended in this court that " since section 7108 of the Education Law specifically prohibits fraudulent advertising only, there is a necessary implication that all other kinds of advertising are permitted and therefore the Board of Regents is without power to adopt a rule declaring any kind of nonfraudulent advertising to be unprofessional conduct" (*Matter of Dubin* v. *Board of Regents,* 286 App. Div. 9, 14). This court rejected that contention and held that the Board of Regents had the power to forbid, by rule, advertising of a type which it found to be unprofessional under the standards prevailing in the profession, even though it was not fraudulent. This holding was apparently approved by the Court of Appeals, although the Court of Appeals reversed the order of this court upon the ground that there was " no proof in the case to the effect that the accepted professional standards of optometry condemn the type of advertising herein involved " (1 N Y 2d 58, 62). It may be noted that in the *Dubin* case no proof

As the Court of Appeals said in the *Dubin* case: " This statute [§ 7108] necessarily qualifies and limits the general rule-making power conferred by section 211 (formerly § 51) and section 7111 (formerly § 1433) of the Education Law " (p. 62).

The Board of Regents may not by general rule forbid advertising unless it is of a kind which, under any and all circumstances, would necessarily constitute unprofessional conduct. Otherwise, it could by rule invade the area which the Legislature has placed beyond its reach (*Matter of Cherry* v. *Board of Regents, supra*). The board can by general rule forbid types of advertising which are necessarily unprofessional but it cannot by general rule deal with borderline cases and by rule declare to be unprofessional a particular type of advertising which may or may not be unprofessional, depending upon its exact nature and its factual setting. " The Board of Regents could not by general regulation ban proper use and improper use indiscriminately " (*Matter of Cherry, supra*, p. 160).

Examining the rule before us, in the light of these principles, I have no difficulty with the portion of the rule forbidding " Advertising by means of large display, glaring * * * or flickering signs ". The record amply demonstrates that, according to professional standards, the use of such signs necessarily constitutes unprofessional conduct.

The portion of the rule forbidding " [Advertising] by means of any sign containing as a part thereof the representation of the human eye or any portion of the human head or the representation of spectacles, eyeglasses, frames or mountings " seems also to be supported by the record as a type of advertising which is condemned *in toto* by accepted professional standards.

---

was offered to establish that the rule was in accordance with professional standards because, at the hearing before the Board of Examiners, there was no attack upon the validity of the rule and, even in the proceeding in this court, the petitioner did not " attack the reasonableness of the rule as expressing the accepted professional standard " but attacked " the rule solely upon the narrow legal ground that it is in conflict with a necessary implication to be drawn from the statutory prohibition of fraudulent advertising " (286 App. Div. 9, 16). In the Court of Appeals, the petitioner in the *Dubin* case shifted the ground of his attack and asserted for the first time that the accepted professional standards of optometry did not condemn the type of advertising forbidden by the rule and the court annulled the determination upon the ground that, upon the record before it, it did not appear that the rule came within the limits of the board's statutory authority.

However, a questionable element has been injected into the rule by the insertion of the word "illuminated" between the word "glaring" and the words "or flickering" and by the addition of the following definition of an illuminated sign: "An illuminated sign shall mean a sign lighted or self-luminous by any means whatever or giving the outward appearance of same". If it were not for the definition, the word "illuminated" might be construed in its context as meaning something akin to a large display, glaring or flickering sign, under the canon of construction (*noscitur a sociis*) which gives color to the meaning of a word by reference to its associations but I believe that the definition precludes this construction of the word; at any rate, that is the view taken in the majority opinion in this case. Construing the term "illuminated sign" broadly in accordance with the definition, the rule seems to me to forbid some types of illuminated signs which are not necessarily unprofessional. There may be circumstances under which the use of illumination may be professionally permissible (cf. *Matter of Cherry* v. *Board of Regents, supra*). As the majority opinion indicates, it is not regarded as unprofessional for a physician to illuminate his name so as to make it readily visible at night and, if this is permissible in a profession in which virtually all advertising is forbidden, it would seem to be clearly permissible in a profession in which the Legislature has authorized at least some forms of advertising.

It is apparent from the record that the attention of the members of the profession was not specifically directed to this point in the survey of professional opinion conducted by the New York State Optometric Association or in the resolutions presented at the conventions of the association. At the 1947 convention, a resolution was adopted which recited that "a number of years ago the Board of Regents of the State of New York adopted a regulation prohibiting the use of glaring or illuminated signs by the practitioners of the profession of Dentistry" and declared it to be the policy of the association that the use of such signs by optometrists should be discouraged. The resolution apparently referred to a rule which had been adopted by the Board of Regents prior to 1945 but the rule had been superseded by a statute enacted that year (L. 1945, ch. 805, amdg. Education Law, § 1311, now § 6613). The statute does not forbid illuminated signs generally but forbids only "large

display, glaring or flickering signs ''. (See similar phrasing in §§ 7011 and 6712 of the Education Law dealing with the podiatry and veterinary professions, respectively, forbidding advertising '' by means of flamboyant or large display or glaring or flickering signs '' in the former case and '' by means of flamboyant, glaring or flickering signs '' in the latter case.)

In view of the apparent desire of the 1947 convention to emulate the standards then prevailing in the dental profession, it may fairly be assumed that all that was intended was the prohibition of '' large display, glaring or flickering signs ''. At the 1948 convention, a resolution was adopted requesting the Board of Regents to formulate and promulgate a rule against the use of '' large, glaring or flickering signs ''. There is no reference in this resolution to illuminated signs generally. At the convention in 1949, this phrasing was repeated.

At the 1950 convention, the word '' illuminated '' was inserted but the resolution did not contain the broad definition of the word '' illuminated '' which was subsequently incorporated in the rule. It does not appear that the definition was ever approved at a convention of the association. After the rule had been promulgated by the Board of Regents, a hearing was held upon an application for reconsideration and at the hearing the association presented a large number of petitions and cards signed by practicing optometrists approving the rule but it does not appear that the attention of the signatories had been drawn to the broad definition of '' illuminated '' or that their signatures indicated specific approval of that portion of the rule. As has been pointed out above, without the broad definition, the word '' illuminated '' in context might reasonably be construed to mean illuminated in a manner which produced an effect similar to a large display or to a glaring or flickering sign and that would clearly be unprofessional.

It certainly cannot be said upon this record that it has been established that accepted professional standards condemn the use of all signs '' lighted or self-luminous by any means whatever ''. The record shows, and it is a fact of common knowledge, that illuminated signs, consisting only of the name of the practitioner and the designation '' optometrist '' (which would be prohibited by the rule), are currently used by practitioners in good standing in the profession.

In the brief submitted by the defendants-respondents, it is stated that it was not the intention of the optometrists in recommending the rule or of the Regents in adopting it, " to interfere with the use of lighting which is solely for illumination and not for unprofessional purposes ". Furthermore, it is stated that the rule " has nothing to do with illumination which is not unprofessional in its effect " and that " The use of electricity to light a sign in order that the sign be readable at night " is not forbidden by the rule. " The placing of floodlights and focusing the floodlights upon a sign " is cited as " an example of the use of illumination which would be unprofessional " and we are told that the purpose of the rule is to forbid " optometrists to use illumination in these objectionable ways ". If the rule is interpreted in accordance with these statements in the brief of the respondents, the rule may well be within the power of the board but, in view of the broad definition of illumination contained in the rule, the interpretation advanced in the brief may not readily be reached and, as I have already noted, it is not the interpretation adopted in the majority opinion in this court. Indeed, if the rule is interpreted in accordance with the brief, it is merely a repetition of the statute and, in effect, provides that the use of an illuminated sign is forbidden only if the nature of the sign is such or the manner of its use is such as to constitute unprofessional conduct. Such a rule adds nothing to the statute and serves no useful purpose as a part of a formal rule. As a matter of fact, upon the oral argument, counsel for the respondents asserted that the portion of the rule dealing with illuminated signs had been inserted only as a warning by the Board of Regents, that any member of the profession who used illumination would run the risk that, in a disciplinary proceeding, the manner of his use might be found to be unprofessional and that he might be disciplined accordingly. But a formal rule is not an appropriate place for the insertion of warnings; furthermore, on its face, the rule goes far beyond a mere warning of a possible future determination by the board; it contains a broad definition of illuminated signs and it undertakes categorically to forbid any sign which comes within the definition. If, as the counsel for the respondents now tells us, the line between unprofessional and professional conduct with respect to illuminated signs (other than in the case of glaring or flickering signs or large displays) is to be drawn upon a case by case basis, in accordance with the factual setting of each case, it is certainly not proper to condemn all use of illumination by a general rule. By the respondents' own concession, this portion of the rule undertakes on its face to " ban proper use and

improper use indiscriminately '' (*Matter of Cherry* v. *Board of Regents,* 289 N. Y. 148, 160, *supra*) and must be held to be invalid.

It need hardly be pointed out that we are not concerned here with any particular type of sign which any one of the plaintiffs may wish to use. The question before us is the power of the board, under the statute, to adopt a rule which undertakes in terms to forbid any sign '' lighted or self-luminous by any means whatever ''. Even in the absence of a rule forbidding illuminated signs, if any practitioner installs an illuminated sign which, under the circumstances, is found to be violative of accepted professional standards, he may be disciplined therefor under section 7108 of the Education Law (*Matter of Bell* v. *Board of Regents,* 295 N. Y. 101).

It has been suggested that the Board of Regents should have the power to adopt rules, at the behest of the leaders of the profession, which would elevate the professional standards above those currently prevailing. I have a great deal of sympathy with this position, but the difficulty is that the Legislature has withheld that power from the board in the area of advertising. In the existing statutory situation, the profession must first raise its standards by its own internal development and then it may ask the board to incorporate the higher standards in its rules. If the leaders of the profession wish to have the State play a more dynamic role in this area, they must appeal to the Legislature either to enact specific regulations of advertising, such as have been enacted with respect to dentistry and other professions, or to vest in the board the power to adopt and enforce rules regulating advertising, subject to appropriate standards to be set by the Legislature (*Packer Collegiate Inst.* v. *University of State of N. Y.,* 298 N. Y. 184), but free from the presently existing limitation that the rules may only reflect the prevailing professional standards.

The declaratory judgment entered in the court below should be modified by providing that the portion of the rule dealing with illuminated signs, other than large displays or glaring or flickering signs, is invalid and, as so modified, the judgment should be affirmed.

Coon, Zeller and Gibson, JJ., concur with Bergan, J. P.; Halpern, J., concurs in part, and dissents in part, in an opinion.

Judgment affirmed, with costs.