**VIDEON CORPORATION, a Missouri Corporation, Appellant,**

v.

**Tyre W. BURTON, E. L. McClintock, William Barton, Frank J. Iuen, and Frank W. May, Commissioners, Public Service Commission, State of Missouri, Jefferson City, Missouri, and Southwestern Bell Telephone Company, Respondents.**

No. 23778.

Kansas City Court of Appeals.

Missouri.

June 3, 1963.

Friedman, Lawson & Burns, Clayton, Ryan & Maitland, Kansas City, Edward J. Lawson, Clayton, John P. Ryan, Kansas City, for appellant.

Glenn D. Evans, Gen. Counsel, and Thomas J. Downey, Asst. Counsel, Jefferson City, for Public Service Commission.

John Mohler and Wm. C. Sullivan, St. Louis, for Southwestern Bell Telephone Co., respondents.

MAUGHMER, Commissioner.

Appellant, Videon Corporation, has been since July 12, 1959, engaged in the business of television service. Respondent Southwestern Bell Telephone Company is a public utility corporation furnishing telephone service in the Midwest, including the City of St. Louis. Each year Bell, in connection with the publication of its regular telephone directory in which all subscribers are listed alphabetically, publishes the Greater St. Louis Classified Telephone Directory, or the St. Louis Yellow Pages. In this Classified or Yellow Page directory commercial telephone customers are classified as to their types of business or professions and listed in alphabetical order thereunder. They may also, for an additional monetary consideration, place an advertisement in the Yellow Pages describing their particular type of merchandising or service offered, providing the contents thereof has the approval of the publisher. Southwestern Bell refused to accept or include, in its 1961 addition of the St. Louis Yellow Pages, Videon's proffered advertisement. Videon thereupon filed a complaint with the Missouri Public Service Commission, alleging that Bell's refusal was unreasonable, discriminatory and unlawful. It asked that the Commission order and direct acceptance and publication of the tendered advertising. After an exhaustive hearing the Commission denied and dismissed the complaint, holding, in effect, that the refusal was not unreasonable or unlawful. The circuit court on review affirmed, and Videon has appealed to this court.

Videon had requested approval for use of the phrase "Videon checks tubes in the home free", in the 1960 Yellow Pages. Bell refused, but a compromise was reached and in lieu thereof these phrases were accepted and used in advertising which appeared in the 1960 addition. "Pay only for tubes necessary to fix your set", and "If tubes won't fix your set, you pay nothing". The Telephone Company was unwilling to renew the advertising with this particular wording for the 1961 issue. No further compromise was effectuated—hence this litigation.

Many witnesses testified before the Commission. Numerous exhibits were received in evidence. It is Videon's position that the chief basis of their particular appeal for business lies in the fact that they check tubes in the home free. Mr. Beatty, president, and Mr. Boos, salesmanager, said the whole purpose of their advertising is to create an image in the minds of the public for "free tube checking in the home". It was the testimony of these company officers that although the company advertises in other media, their calls for service must almost all come by telephone, that while owners of television sets may see Videon's advertising on television or hear it on radio, they will not write down the name, the address or telephone number of the company unless and until their sets become inoperative and they need the service, at which time they will look in the Yellow Pages and if appellant is not there advertised it will lose business. President Beatty of Videon estimated that there had been a fifty percent decline in the number of their customer telephone calls since publication of the 1961 directory.

Videon's business classification, as to which there is no dispute, is under "Tele-

vision service". Three hundred sixty-five television service groups in the St. Louis area were listed in the 1961 Directory but only 133 of these advertised in the Yellow Pages and these conformed to Bell's requirements.

Mr. John A. Owen, Directory Sales Supervisor for Southwestern Bell testified that Videon's advertisement was refused because: (1) The rule of Southwestern Bell reading "The use of the word 'free' is not permitted in any advertisement unless the article or service is actually free or unless the conditions governing the offer are so pronounced and prominent as to preclude possibility of misunderstanding"; (2) Bell was "going along" with the advertising plan of the Better Business Bureau, under which the word "free" or words that had the same meaning as "free" could not be used in "Television Service" advertising; (3) The actual decision to reject was directed by Mr. Hyatt, his superior officer; (4) Acceptance would have violated an agreement with the television industry in St. Louis.

Neither Mr. Owen nor Mr. Hyatt had personally received complaints as to Videon or its advertising as contained in the 1960 Yellow Pages. However, Mr. John L. O'Brien, President and General Manager of the Better Business Bureau in St. Louis, stated that his office had received such complaints (177 in number) some written and some by telephone. Mr. O'Brien described a meeting of representatives of the television service industry in St. Louis held on March 17, 1960, in the Chase Hotel. Some 300 representatives were in attendance. More than half signed pledge cards approving certain standards of advertising for the industry. We set forth some of these standards:

Item 5. "Bait advertising and selling practices shall not be used. Bait advertising is an alluring but insincere offer to sell something to the general public. * * * Its primary purpose is to induce customers to respond so that they can be switched to other items".

Item 6. "Price advertising. There shall be no quotation of a price or prices for service calls, examination or labor, in any advertisement. * * *"

Item 7. "Free service. There shall be no wording or device used to give the impression that service will be given without cost * * *".

Videon employed some 22 servicemen who responded to these customer calls. They were paid $2 per hour by Videon plus 20 percent commission on the sale of tubes and on repair work if the set was brought in for repair. Only about 15 percent of the calls failed to result in either tube sales or repair work. Videon offered and there was received in evidence various advertisements found in the St. Louis Directory in which the word "free" or words of similar import appeared. We mention two. Arthur Murray Dance Studios. "Free! Private Lesson and Studio Party", and the Telephone Company itself advertised it would furnish free planning for telephone service in new homes. Telephone directories from other cities (Dallas, Ft. Worth, Wichita and Louisville) were received. These contained television service advertising similar to that proffered by Videon. However, the St. Louis Directory contained no such advertising from any representative of the "Television Service" industry.

The Commission concluded that while advertisements similar to Videon's appeared in Southwestern Bell Directories in other cities, respondent was making an effort to eliminate such advertising and it could not be done all at once in every city; that appellant was not the victim of unlawful discrimination and denied the complaint.

We are first confronted with respondent Southwestern Bell's challenge to the jurisdiction of the Public Service Commission. Its counsel declared it was willing "to submit its controversy with Videon

to the Commission as an impartial umpire"; otherwise it would have sought a writ of prohibition. Bell prevailed as to the ultimate result before the Commission and filed no motion for rehearing, nor did it appeal. The Commission asserts that because Bell failed to file a motion for rehearing that the protest or challenge as to the Commission's jurisdiction has been waived. It has long been the rule that "objections to jurisdiction" may not be waived and may be first presented on appeal. In fact the court may and should examine the question, sua sponte. State ex rel. Smithco Transport Co. v. Public Service Commission, Mo.App., 307 S.W.2d 361, 374, and Peerless Fixture Co. v. Keitel et al., 355 Mo. 144, 195 S.W.2d 449, 451. Nevertheless, Bell filed a motion to dismiss for want of jurisdiction and urges that point on appeal. We must determine if the Commission has jurisdiction to regulate advertising in the Telephone Company's classified directory. The Commission expressed the opinion that "in all matters where a utility company under the jurisdiction of the Commission is charged with performing in a discriminatory manner any service for which it makes a charge, the Commission has jurisdiction to pass upon such question". Respondent Bell was thereupon ordered to file with the Commission "a copy of the advertising rules and regulations pertaining to the Yellow Pages of its Missouri Directories".

■ The Missouri Public Service Commission has only such powers as are expressly conferred upon it by the Statutes and such as are reasonably incidental thereto. State ex rel. and to use of Kansas City Power & Light Co. v. Buzard, en Banc, 350 Mo. 763, 168 S.W.2d 1044; State ex rel. Harline v. Public Service Commission, Mo.App., 343 S.W.2d 177, 181.

We quote from the applicable Missouri statutes, Section 386.250, V.A.M.S.: "Jurisdiction of the Commission. (6) To all telephone lines, as above defined * * * so far as said telephone * * * lines are and lie, and so far as said telephone companies * * * conduct and operate such line or lines, * * * within this state". Section 386.020, V.A.M.S. (18) "The term 'telephone line,' when used in this chapter, includes conduits, * * *, appliances and all devices, real estate, easements, apparatus, property and routes used, operated, controlled or owned by any telephone corporation *to facilitate the business of affording telephonic communication*". (Italics added).

In California Fireproof Storage Co. v. Brundige et al. (1926) 199 Cal. 185, 248 P. 669, 670, 671, 47 A.L.R. 811, the telephone company sought to charge petitioner $100 per month for a half page advertisement in its classified directory while other advertisers could secure the same space at $50 per month. The California Railroad Commission held it had no jurisdiction. The Supreme Court reversed and directed the Commission to take and exercise jurisdiction, saying:

"The single question presented in this proceeding is as to whether the Railroad Commission has, and should, assume jurisdiction over the telephone directories of the Southern California Telephone Company, a public service corporation, and over the matter of the form and content of such directories, and over the matter of the charges and receipts of said corporation connected with, and accruing from, the publication, distribution, and use of such directories. A telephone directory is an essential instrumentality in connection with the peculiar service which a telephone company offers for the public benefit and convenience. It is as much so as is the telephone receiver itself, which would be practically useless for the receipt and transmission of messages without the accompaniment of such directories. The form which such directories conveniently took with the inception of this modern method of message transmission was that of an alphabetical list of the names of the subscribers to the service, and there can

be no question as to the right of the regulatory body over this form of public utility to regulate the form, content, and cost thereof to subscribers who had entitled themselves to the convenient use of such service.

\* \* \* \* \* \*

"In the development of this form of public service telephone companies have found it practicable and profitable to diminish the cost and increase the profits of operation by making use of its directories as a means and form of advertising available to its subscribers. The activities of these companies in this direction have taken on two forms: First, that of the insertion of advertising matter in connection with its classified list; second, in the printing in the alphabetical list of its subscribers the names of those who are willing to pay for such preference in boldface type, or, in other words, in a better and clearer type than that employed in printing the names of subscribers not paying extra for such preferment. Granting the right of these public service corporations to employ this instrumentality for such profitable purposes, we cannot do other than regard its use for such purposes as a mere incident in the operation of its public service over which the regulating body ought to have full control.

\* \* \* \* \* \*

"The telephone service in its relation to the public, and in its general and practical operation is, or at least tends to be, a natural monopoly; and, this being so, it is, in an especial sense, the proper subject of public regulation and control".

The California Public Utilities Commission (1957), Frank Serpa, Jr. v. Pacific Telephone & Telegraph Co., 17 P.U.R. 3d 378, 380, said: "Since the publication of advertisements and the listing of businesses in a directory is vital to the proper rendition of telephone service it is a matter within the regulatory jurisdiction of the Commission". That the Michigan Public Service Commission and the Oklahoma Corporation Commission exercise jurisdiction over advertising in the telephone companies' directories is plainly revealed by examination of the rulings in The $5 a Day and 5¢ a Mile Rent-a-Car Co. v. Michigan Bell Telephone Co., Case No. U–665, Aug. 3, 1961, and AAA \* \* \* Inc. v. Southwestern Bell Telephone Co., Cause No. 22593, May 16, 1961, Oklahoma Commission.

However, there is weighty authority to the contrary. Mr. Justice Pecora (Abco Moving & Storage Corp. v. New York Telephone Co., Sup.Ct. New York County, 1948, 193 Misc. 96, 83 N.Y.S.2d 448, 449) said: "In my opinion, the telephone company in publishing a classified directory does not perform an essential public service except with respect to ordinary listings therein. As to advertisements the position of a telephone company is analogous to that of the publisher of a newspaper or magazine". McTighe v. New England Telephone & Telegraph Co. (U.S.App.2nd Cir. 1954) 216 F.2d 26, 27, involved a breach of contract for omitting plaintiff's name from both the alphabetical and classified directories. Medina, Circuit Judge, said:

"As the publication of the alphabetical directory is an essential feature of the service rendered by the telephone company, regulations and requirements relative thereto appear together with the tariffs as filed with the Vermont Public Service Commission.

\* \* \* \* \* \*

"The publication of the classified directory, however, is wholly a matter of private contract and contracts relating thereto are not required to be filed with the Public Service Commission which has no jurisdiction except over matters relating to the public utility services rendered by the company and the rates relative thereto".

In Felix v. Pennsylvania Public Utility Commission, 187 Pa.Super. 578, 146 A.2d

347, 350, 351, appellant filed a complaint requesting that rates charged by the telephone company for listings in its classified directory be declared a matter within the jurisdiction of, and subject to, regulation by the Commission. The Commission dismissed the complaint for want of jurisdiction and the Supreme Court of Pennsylvania affirmed, saying:

> "As an advertising medium the classified directory is similar to the sale of appliances or equipment by utilities. Such activities are normally not within the jurisdiction of the Commission.
>
> \* \* \* \* \* \*
>
> "\* \* \* since the classified directory, except insofar as standard type listings furnished free to subscribers are concerned, is an advertising medium and not a public service, the Commission did not err in declining to take jurisdiction of appellant's complaint".

The subscribers (Mitchell et al. v. Southwestern Bell Telephone Co., Mo.App., 298 S.W.2d 520, 524) sued the telephone company for damages for breach of an advertising contract because one of the telephone numbers used was not the correct number. The court said:

> "The running of advertisements in the classified section of a telephone directory is not a public service but a matter of private contract between the subscriber and the telephone company and a contractual limitation of liability for the breach of such a contract is a valid limitation. Baird v. Chesapeake & Potomac Telephone Co., 208 Md. 245, 117 A.2d 873; McTighe v. New England Telephone & Telegraph Co., 2 Cir., 216 F.2d 26; Russell v. Southwestern Bell Telephone Co., D.C.Tex., 130 F.Supp. 130".

The weight of authority seems to treat the publication—including advertising—of a classified telephone directory as being more nearly a private matter than one of public interest so as to make it subject to regulation by a Public Service Commission.

However, a telephone company enjoys the advantage of being a monopoly for its area in the field of telephonic communication. As a subscriber for a private telephone I am entitled to have my name and telephone number listed in the regular directory. It is part of the service furnished in return for my payment. Without such a current alphabetical directory, the utility value of my telephone would be infinitely less. Apparently all the court and commission authorities agree that this regular directory is subject to the jurisdiction of and regulation by the Public Service regulatory bodies. A greater charge is paid for a business telephone than for a private telephone and in partial return therefor the customer is entitled to be listed under the proper business or professional grouping in the Classified Directory. Such subscriber also has what might be termed an option to buy advertising therein subject to the reasonable rules and regulations of the Telephone Company. Who or what body shall determine if these rules and regulations are reasonable? Shall the Telephone Company alone have such authority subject only to possible correction for gross abuses by the courts? The Classified Directory, like the regular directory, or, for that matter, the telephone itself, is provided by a company which enjoys an absolute monopoly. A business dependent even partially upon the telephone—and many businesses are to a great extent so dependent—is at a tremendous disadvantage with no telephone. It is prejudiced if not listed in the Classified Directory and the business is damaged if it is denied the right to advertise in the Classified Section, especially if competitors do advertise there. There is no comparable advertising media. The Telephone Company's control of telephones is no more monopolistic than is its control of the Classified Directory advertising. In neither instance can the customer secure either the telephone or the Classified Directory advertising elsewhere. The com-

pany derives revenue from this source which should be and is considered in fixing the over-all rates. We think the value of this advertising media has of recent years become increasingly greater.

Our Missouri Statute (Sec. 386.020(18) supra), provides for regulation of any apparatus or property used "to facilitate the business of affording telephonic communication". Is not the Classified Directory and the advertising in connection therewith a property or a publication which is an integral part or an adjunct, which actually does "facilitate the business of affording telephonic communication"? If it is, then our Legislature has given jurisdiction to the Commission and it is generally conceded that the Legislature may grant or delegate such authority. Respondent Bell's contra position here is that the legislative body has not done so.

■ We believe that the publication of the Classified Directory and the advertising thereunder is a method, procedure and operation which is designed for and actually does facilitate the business of affording telephonic communication, is truly a monopoly in that advertising field and is public business insofar as its business subscribers are concerned. Such a publication sui generis ought to be subject to reasonable rules and regulations. The Telephone Company would probably not try to enforce arbitrary requirements and should be given great leniency in restricting the contents of advertising, not only for the protection and preservation of its own good name but also to shield the public from pillage and misunderstandings. While the company itself might do these things, it is the procedure under our system of government, for a corporation serving in natural monopolistic fields to be subjected to regulation in all of its business ramifications where the customer, unprotected by competition or freedom of contract, might be imposed upon or harshly treated. In Missouri the Public Service Commission is the body created especially to exercise such regulatory func-

tion. We believe our Legislature has by statute (Sec. 386.020 [18] supra) vested such power and authority in the Commission. It is our opinion that during recent years the importance and value of the Classified Directory and the advertising therein in a large city, has become so great and vital, that the courts should liberally approve rather than narrowly restrict, the exercise of such regulation. We, therefore, hold that the Missouri Public Service Commission does have jurisdiction in the premises.

■ We now proceed to the merits of this controversy. The function of the circuit court and of this court in reviewing a decision and order of the Public Service Commission is to determine if such order is reasonable and lawful. Section 386.510, V.A.M.S. For the order to have been reasonable it must have been based upon competent and substantial evidence upon the whole record. Mo.Const.1945, Art. V, Sec. 22, V.A.M.S. Our function is not to substitute our judgment for that of the Commission on facts, but rather to determine whether the order was lawful and reasonable, and the burden to show it to be unreasonable is upon appellant. State ex rel. City of West Plains et al. v. Public Service Commission, Mo. en Banc, 310 S.W.2d 925, 929, 933.

■ Appellant invites our attention to Section 392.200(3), V.A.M.S., which provides:

"No telegraph corporation or telephone corporation shall make or give any undue or unreasonable preference or advantage to any person, corporation or locality, or subject any particular person, corporation or locality to any undue or unreasonable prejudice or disadvantage in any respect whatsoever;".

This statute expresses a salutary principle and one supportable in both law and equity. However, unjust discrimination can only arise from discrimination among those in

the same class. Advertising which might be acceptable in the industrial or service field might not be acceptable in another field. For example, dry cleaners might advertise free return delivery of garments left with them for cleaning and it would lead to less complaints and misunderstandings than would a television service advertisement proclaiming free inspection of tubes. In other words, we think a differentiation between these two groups would be reasonable. While we see no justification for accepting advertising promising something "free" from the Arthur Murray Dance Studio, that is a different field and a different classification from Videon's television service. We believe Videon can successfully invoke discrimination only if a preference is demonstrated or a discrimination shown in its own particular field or class. The subject is treated this way in 73 C.J.S. Public Utilities § 7, pp. 999, 1000:

> "A public utility is obligated by the nature of its business to furnish its service or commodity to the general public, or that part of the public which it has undertaken to serve, without arbitrary discrimination, and it must, to the extent of its capacity, serve all who apply, on equal terms and without distinction, as far as they are in the same class and similarly situated, since a reasonable classification is permissible, provided all those similarly circumstanced are treated alike".

Again on this question we quote from Frank Serpa, Jr. v. Pacific Telephone & Telegraph Co., 17 P.U.R. 3d 378 (1957), wherein the California Public Utilities Commission said:

> "(2) The policy of defendant in refusing to include prices in any advertisements placed in its classified telephone directory is found to be reasonable and necessary to prevent misleading and unfair advertising. The prices included in advertisements in a telephone directory which is published only once a year will very probably become unrealistic in view of changes in costs of labor and materials. Also, it permits 'bait' advertising, which is found to be undesirable.

> \*    \*    \*    \*    \*    \*

> "Since the publication of advertisements and the listing of businesses in a directory is vital to the proper rendition of telephone service it is a matter within the regulatory jurisdiction of the Commission. However, because the telephone company in publishing the directory is itself a party to any representations therein and to any practices carried on by advertisers therein, it has the duty as well as the right to see that the public is treated fairly and honestly. It must, therefore, be permitted a reasonable amount of supervision and the determination of proper policies as to the content of advertisements published. These policies must be nondiscriminatory and fair".

In Strauss v. University of State of New York, 2 A.D.2d 179, 153 N.Y.S.2d 397, 401, 402, the University regents prohibited certain advertising by optometrists, who claimed they were discriminated against in favor of opticians and oculists. The court said:

> "In effect plaintiffs argue, aside from the point that the Regents had not the statutory power to enact the regulation, that it discriminates against this profession because opticians and oculists are allowed to practice under regulations which plaintiffs regard as less burdensome. But this, so it seems to us, is a matter to be settled within a profession. Each profession has its own intramural problems as well as its own aspirations which require special treatment according to its special needs. This kind of difference is not 'discrimination' in any constitutional or legal sense".

See also State ex rel. Laundry, Inc. v. Public Service Commission, 327 Mo. 93, 34 S.W.2d 37, 43, 44.

On appeal appellant has urged that the refusal of its proffered advertisement amounts to a violation of Section 416.040, V.A.M.S. generally known as the Restraint of Trade and Conspiracy statute. We believe such charge is unsupported by the evidence and is not valid.

We find that the Commission's finding of no unlawful discrimination and no unreasonableness in refusing to accept Videon's advertising as submitted is supported by substantial and competent evidence. Certainly appellant has not sustained the burden resting upon it to show that the order was unreasonable and amounted to unlawful discrimination.

Finding no error, the judgment is affirmed.

SPERRY, C., concurs.

PER CURIAM.

The foregoing opinion of MAUGHMER, C., is adopted as the opinion of the Court.

All concur.