## 53178. SOUTHERN BELL TELEPHONE & TELEGRAPH COMPANY v. C & S REALTY COMPANY.

WEBB, Judge.

Southern Bell brings this appeal from a judgment awarding C & S Realty Company $55,000 actual damages and $35,000 as attorney fees. C & S Realty Company instituted the action on April 4, 1973, by filing a three count complaint seeking actual damages, exemplary and vindictive damages plus attorney fees, predicated upon allegations of breach of contract, gross negligence and bad faith concerning Southern Bell's telephone service and listings. It subsequently filed an amended complaint adding two counts seeking damages.

At the trial of the case before a jury the following essential facts were established. Since 1950 C & S Realty Company had been in business and maintained listings in both the alphabetical telephone directory white pages and the classified telephone directory yellow pages, published by Southern Bell for the Atlanta area, and had contracted for additional listings and advertising in the yellow pages

under various classifications including Realtors, Property Management and Property Development. On February 11, 1971, a directory advertisement renewal authorization in the firm name of "C & S Realty" was executed with Southern Bell for listings and advertising in the yellow pages to be published for use in 1972. On or about September 10, 1971, an employee in Southern Bell's business office received instructions from "C & S Realty Investors" to make its listing a private number. Such an order operates to supersede any previous instructions from the customer with respect to listings in the white pages and advertising in the yellow pages. Southern Bell's employee erroneously ascribed the order from "C & S Realty Investors" to the account of "C & S Realty Company" when she completed the order form, and a directory advertising application was prepared to remove the listings and advertising of C & S Realty Company from both the white and yellow pages then being prepared for distribution for use in 1972. C & S Realty Company became aware of the error when it discovered that its main number had been disconnected and reassigned and it received its monthly bill which included a service charge for changing a listing to a private number. Corrections could not be made in time for the former number to appear in the 1972 white or yellow pages and normal telephone service was not restored until June of 1972. Errors in the addresses of C & S Realty Company and two of its officers also appeared in later editions of both directories.

At the close of the evidence Southern Bell made a motion for directed verdict on each of the counts of the complaint, which was denied. The jury returned a verdict for C & S Realty Company on Count 1 and a verdict for Southern Bell on each of the other four counts.[1] Following entry of judgment Southern Bell moved for judgment notwithstanding the verdict or, in the alternative, for a new trial or for an order reducing an excessive verdict. It now appeals the denial of this motion.

[1] The jury initially returned a verdict in favor of C & S Realty Company on all five counts but awarded damages only as to Count 1. This verdict was amended by

As a general rule, the question of damages being one for the jury, appellate courts should not interfere with such awards. Code Ann. § 105-2015; *Kiker v. Davis,* 103 Ga. App. 289, 290 (1) (118 SE2d 861) (1961). However, applicable tariffs and contractual provisions here expressly limit Southern Bell's liability to specified amounts absent a showing of gross negligence, and the evidence adduced upon the trial is devoid of facts establishing that the omission of C & S Realty's listings and advertisements from the 1972 directories was wilful or resulted from the gross negligence and bad faith of Southern Bell employees. We therefore conclude that the trial court erred in overruling Southern Bell's motion for directed verdict and subsequent motion for judgment n.o.v. as to Count 1 of the complaint.

1 (a). Southern Bell's liability as to errors in the white pages of the telephone directory is limited by Section A2.5.1(d) of the Public Service Commission General Subscriber Services Tariff, effective January 1, 1969. Apart from a credit allowance equal to 1/30 of the tariff monthly rate for all services and facilities rendered useless for each 24 hours during which service has been interrupted, "no liability shall attach to the telephone company, its agents, servants or employees, in the course of establishing, furnishing, rearranging, moving, terminating, or changing the service or facilities (including the obtaining or furnishing of information in respect thereof or with respect to the subscribers or users of the service or facilities) in the absence of gross negligence or willful misconduct." This court has recently upheld such limitations on liability to subscribers as relevant to the rate-making powers of the Public Service Commission and therefore constitutional and binding on subscribers. *Southern Bell Tel. & Tel. Co. v. Invenchek, Inc.,* 130 Ga. App. 798 (1) (204 SE2d 457) (1974) cert den., April 4, 1974.

(b) Questions of negligence, including gross neg-

---

order of the trial court and judgment entered for C & S Realty on Count 1 in the amount of $55,000 in actual damages plus $35,000 attorney fees, and for Southern Bell on Counts 2-5.

ligence, are ordinarily issues for jury determination (*Stanley v. Carpenter,* 118 Ga. App. 607 (2) (164 SE2d 883) (1968)), "except in plain, palpable, and indisputable cases. [Cits.]" *Peacock v. Sheffield,* 115 Ga. App. 116, 121 (153 SE2d 619) (1967); *Macon Tel. Pub. Co. v. Graden,* 79 Ga. App. 230 (1(d)) (53 SE2d 371) (1949).

There was no factual dispute here that the listing for C & S Realty was omitted from the 1972 white pages or that the omission was caused by an error on the part of an employee of Southern Bell. However, Southern Bell provides training to its employees designed to minimize errors and there had been no prior complaints about the performance of this employee's duties or any reason to believe that she was anything other than efficient, careful and competent. The error was caused by her confusion between C & S Realty Company, the plaintiff, and C & S Realty Investors, another Southern Bell subscriber. Officers of C & S Realty Company testified that there had been numerous prior occasions when people confused its name with similarly-named concerns such as the C & S National Bank, or called C & S Realty Company believing it to be affiliated with the C & S Bank.[2] Out of some 345,000 yellow page entries processed, there was an overall error rate of one half of one percent.

This court has defined gross negligence to be "equivalent to failure to exercise even a slight degree of care. It is materially more want of care than constitutes simple inadvertence. It is an act or omission respecting legal duty of an aggravated character as distinguished from a mere failure to exercise ordinary care. It is very great negligence or the absence of slight diligence, or the want of even scant care." *Tidwell v. Tidwell,* 92 Ga. App. 54, 57 (4) (87 SE2d 657) (1955). There have been no decisions in Georgia concerning gross negligence in the context of telephone directory listings, but a review of cases from other jurisdictions reveals that where applicable tariff or contractual provisions limit a telephone company's liability, the courts generally rule as

---

[2] C & S Realty Company has no relationship to the C & S National Bank.

a matter of law that judgment should be entered for the defendant. See, e.g., Robinson Insurance & Real Estate v. Southwestern Bell Tel. Co., 366 FSupp. 307 (W.D. Ark. 1973); Wheeler Stuckey, Inc. v. Southwestern Bell Tel. Co., 279 FSupp. 712 (W.D. Okla. 1967); Smith v. Southern Bell Tel. & Tel. Co., 51 Tenn. App. 146 (364 SW2d 952) (1962); Hamilton Employment Service, Inc. v. New York Tel. Co., 253 N.Y. 468 (171 NE 710) (1930). See generally Montana ex rel. Mountain States Tel. & Tel. Co. v. District Court, 160 Mont. 443 (503 P2d 526) (1972).

Thus it has been stated in an annotation on this subject: "That degree of grossness of negligence required to overcome the effect of an applicable limitation of liability or to permit the recovery of exemplary damages has not been found to have been established in any case involving merely inadvertently, as distinguished from truly intentionally, erroneous listings. . . [N]o case within the annotation has clearly held that merely inadvertent or negligent directory errors, as distinguished from literally intentional errors, . . . may be found to constitute gross negligence, and several have held to the contrary." 92 ALR2d 917, § 2 at 921, § 13 at 945 (1963). The Supreme Court of North Carolina recently reaffirmed these comments by reversing a contrary ruling of the Court of Appeals. Gas House, Inc. v. Southern Bell Tel. & Tel. Co., 289 N. C. 175 (221 SE2d 499) (1976).

We find no evidence in the voluminous transcript here to indicate anything other than inadvertent clerical error as the cause of the omission of C & S Realty's 1972 listings. We thus conclude, in light of the persuasive authorities hereinabove cited granting judgment as a matter of law in directory-error cases, that the trial court erred in submitting to the jury the question of whether there was gross negligence or a wilful and wanton error. Southern Bell's liability for the omission is limited to the credit allowance provided by the General Subscriber Service Tariff in Section A2.5.1(d).

(c) Southern Bell's liability for the omission of C & S Realty's listings and advertising in the 1972 yellow pages is limited by contract to the amount of its charges for such listings and advertising. The publication of the yellow pages is governed in general by a limitation of liability

stated in each issue,[3] and in this case there was an additional contractual limitation for errors or omissions set forth in C & S Realty's contract with Southern Bell for 1972 yellow page listings and advertising[4] which is dispositive here. Since publication of the yellow pages is apart from Southern Bell's public service it may relieve itself by valid contract from liability for ordinary negligence, and such an agreement is not void as against public policy. See *Seaboard C. L. R. Co. v. Freight Delivery Service,* 133 Ga. App. 92, 93 (1) (210 SE2d 42) (1974) and cits.; Neering v. Southern Bell Tel. & Tel. Co., 169 FSupp. 133 (S. D. Fla. 1958), where summary judgment was granted to Southern Bell on the basis of the same contract clause involved here; Gas House, Inc. v. Southern Bell Tel. & Tel. Co., 289 N. C. 175, supra; Montana ex rel. Mountain States Tel. & Tel. Co. v. District Court, 160 Mont. 443, supra; Wheeler Stuckey, Inc. v. Southwestern Bell Tel. Co., 279 FSupp. 712, supra; Georges v. Pacific Tel. & Tel. Co., 184 FSupp. 571 (D. Ore. 1960); Russell v. New York Tel. Co., 291 NYS2d 709 (1968); Wilson v. Southern Bell Tel. & Tel. Co., 194 S2d 739 (Ct. App. La. 1967); Baird v. Chesapeake & Potomac Tel. Co., 117 A2d 873 (Ct. App. Md. 1955); Cole v. Pacific Tel. & Tel. Co., 246 P2d 686 (Cal. 1952).

(d) A simple clerical error is not equivalent to gross

---

[3] "The Yellow Pages are published for the benefit and convenience of our subscribers. Each business subscriber is listed under one general classification without cost. The telephone company assumes no responsibility or liability for the errors or omissions occurring in the Yellow Pages. Errors or omissions will be corrected in a subsequent issue, if reported by letter to the Company."

[4] "6. The Telephone Company's liability on account of errors or omissions of such advertising shall in no event exceed the amount of charges for the advertising which was omitted or in which the error occurred in the then current directory issue and such liability shall be discharged by an abatement of the charges for the particular listing or advertisement in which the omission or error occurred."

negligence or wilful and wanton misconduct where contracts for yellow pages listings are involved (see, e.g., Robinson Insurance & Real Estate v. Southwestern Bell Tel. Co., 366 FSupp. 307, supra) and there was no proof here that the omissions resulted from wilful misconduct or gross negligence, as discussed in subsection (b), supra. It follows that the trial court also erred in denying Southern Bell's motion for directed verdict and in overruling its motion for judgment n.o.v. with respect to the 1972 yellow pages omissions.

2. Having ruled that Southern Bell's liability for actual damages is limited to the tariff and contractual credit allowances, we turn to the question of whether the jury could properly award attorney fees. Such expenses of litigation are not generally allowed as a part of the damages a plaintiff may recover unless the defendant has acted in bad faith, or has been stubbornly litigious, or has caused the plaintiff unnecessary trouble and expense. Code § 20-1404; *Christopher v. Almond,* 177 Ga. 211, 213 (169 SE 899) (1933).

Although Count 1 of its complaint was based on uncontroverted omissions from the 1972 directories, as previously discussed the evidence did not show bad faith in the circumstances surrounding these omissions. However, C & S Realty argues that Southern Bell acted in bad faith by refusing to reach a settlement with it, by failing for several months to straighten out a problem with information service referrals to its auxiliary line or to furnish properly functioning telephones at its offices, and by not amending its answer to admit certain allegations. We do not agree.

"The bad faith referred to has been consistently held by Georgia courts to refer to the conduct of the defendant in his dealings with the plaintiff out of which the suit arose, rather than the defendant's conduct in defending the suit." University Computing Co. v. Lykes-Youngstown Corp., 504 F2d 518, 548 (5th Cir. 1974), citing *Adams v. Cowart,* 224 Ga. 210 (160 SE2d 805) (1968); *B-X Corp. v. Jeter,* 210 Ga. 250 (78 SE2d 790) (1953); *Traders Ins. Co. v. Mann,* 118 Ga. 381 (45 SE 426) (1903). Moreover, "the Georgia courts have placed a gloss on the requirements of § 20-1404—adding to them the

further requirement that in order for a plaintiff to be entitled to attorney's fees the jury must award the plaintiff substantially what he has requested in damages." University Computing Co. v. Lykes-Youngstown Corp., 504 F2d 518, 548, supra; *Ga. Farm Bureau Mut. Ins. Co. v. Boney,* 113 Ga. App. 459 (1) (148 SE2d 457) (1966); *Broyles v. Johnson,* 103 Ga. App. 102 (5) (118 SE2d 734) (1961); *Simonton Const. Co. v. Pope,* 95 Ga. App. 211 (3(c)) (97 SE2d 590) (1957) (rev. on other grounds 213 Ga. 360 (99 SE2d 216) (1957)).[5] And, where there is a bona fide controversy, "Of course, Code § 20-1404 does not allow recovery for mere refusal to pay..." *G.E.C. Corp. v. Levy,* 126 Ga. App. 604, 607 (2) (191 SE2d 461) (1972) and cits.; *Buffalo Cab Co. v. Williams,* 126 Ga. App. 522, 524 (191 SE2d 317) (1972). See also *D. H. Overmyer Co. v. Nelson-Brantley Glass Co.,* 119 Ga. App. 599, 605 (2) (168 SE2d 176) (1969), where the plaintiff obtained a directed verdict on liability and actual damages but the court held that the defendant was entitled to a directed verdict on attorney fees.

3. Under the disposition we make here it is unnecessary to consider the remaining enumerations of error.

*Judgment reversed. Deen, P. J., and Marshall, J., concur.*

ARGUED JANUARY 5, 1977 — DECIDED JANUARY 17, 1977 — REHEARING DENIED FEBRUARY 8, 1977 — ▮▮▮▮▮

*Kilpatrick, Cody, Rogers, McClatchey & Regenstein,*

---

[5] In Counts 1, 2 and 4, C & S Realty requested "not less than" $55,000 in actual damages, $200,000 in exemplary and vindictive damages, and attorney fees of $85,000. Count 3 sought $150,000 for breach of contract and Count 5 asked for $50,000 actual plus $1,000,000 in punitive damages for further alleged breaches. As previously stated, the jury found for Southern Bell in Counts 2 through 5 and awarded C & S Realty only $55,000 total damages and $35,000 attorney fees as to Count 1.

*Harry S. Baxter, A. Kimbrough Davis, Edmund M. Kneisel, Susan A. Cahoon,* for appellant.
*Worozbyt & Nodvin, Marvin P. Nodvin,* for appellee.