### 70673. LORING v. BELLSOUTH ADVERTISING & PUBLISHING CORPORATION.
(339 SE2d 372)

SOGNIER, Judge.

Gene Loring, d/b/a Christopher's Kind Bookseller, brought this action against BellSouth Advertising & Publishing Corporation (BA&P) seeking, inter alia, injunctive and declaratory relief from BA&P's refusal to accept for publication in its classified advertisement directory ("yellow pages") Loring's advertisement which contained the words "lesbian" and "gay male." A temporary injunction was issued by the trial court and then later dissolved following an evidentiary hearing. The issue of declaratory relief was then submitted to the trial court for decision on the basis of the record and without the intervention of a jury. The trial court rendered its judgment in favor of BA&P and Loring appeals.

The trial court found that appellee, a Georgia corporation, is a wholly owned subsidiary of BellSouth Corporation (BellSouth) which is also the parent corporation of Southern Bell Telephone and Telegraph Company (Southern Bell). Southern Bell is a public utility which enjoys a monopoly in local telephonic communication and is regulated by the Georgia Public Service Commission (PSC). Southern Bell published both the white and the yellow pages directories until the breakup of AT & T in January 1984 at which time appellee assumed the publication duties pursuant to a written agreement between it and Southern Bell. Appellant's bookstore, which opened in 1980 was contacted that same year by a representative of Southern Bell about advertising in its yellow pages. Although Southern Bell rejected a draft advertisement from appellant at that time, appellant was again contacted in 1981 and, after the Southern Bell representative obtained specific authorization, Loring's advertisement was accepted by Southern Bell. The text of the advertisement as published is as follows:

### CHRISTOPHER'S KIND BOOKSELLER
#### LESBIAN AND GAY MALE LITERATURE
#### PERIODICALS, CARDS AND RECORDS, ETC.

together with the address and telephone number of the store. For the next three years this advertisement was run in the yellow pages under the heading "Book Dealers—Retail." The cost for such advertisement was billed to appellant each month on his telephone service bill; there is no evidence that such cost has not been timely paid.

In May 1984, appellee notified appellant that his advertisement would not be accepted for the 1984-1985 yellow pages directory, so long as it contained the words "lesbian" and "gay," because the advertisement was said to violate the "Yellow Pages Standards (Ethics)." Section 5.26 of such policy is as follows: "The Company may determine, as a matter of policy, not to accept advertisement with respect to homosexuals on the grounds that to do so may at this time be offensive to a segment of its directory users who fully utilize the telephone and directory as a means of communication." The ethics policy in question is identical to the ethics policy of Southern Bell in effect at the time appellant's advertisement was first accepted and published. The trial court found that appellee's ethics committee made an internal business decision to reject advertisement concerning homosexuals, including appellee's advertisement on the rationale that "such an advertisement may be considered controversial by, or may offend, a certain segment of its customers." Appellee also asserts this standard seeks to uphold the prestige of its directory. Appellee admits that in the three years in which the advertisement has run in the Southern Bell published yellow pages directory, not one complaint

from the public or a customer has been received.

The threshold issue in this case is whether appellee's directory publication business is that of a private enterprise with an unqualified right to reject appellant's advertisement or that of a public enterprise subject to public regulation by the courts in its business decisions regarding the advertising it will accept. We agree with the trial court's finding that appellee is a private enterprise. As noted by the trial court, Southern Bell and appellee are both wholly owned subsidiaries of BellSouth but while Southern Bell is a public utility, appellee is not a public utility and its connection with Southern Bell is not enough in itself to make the service appellee provides necessarily a public service. See *Ga. Power Co. v. Ga. Public Svc. Comm.*, 211 Ga. 223, 228 (85 SE2d 14) (1954). While the PSC requires alphabetical listing of telephone numbers in the white pages be published and regulates the publication of the white pages as being within the realm of Southern Bell's responsibilities as a public utility, it is uncontroverted that the PSC does not require Southern Bell to publish a yellow pages directory and does not regulate any phase of appellee's yellow pages directory publication business. Although appellant argues, and the trial court noted, that "[f]or all practical purposes, if not for *all* purposes, there is no other 'yellow pages' publication which services the City of Atlanta" and that four out of five adults use appellee's directory in the metro Atlanta market, appellee does not have a monopoly in the directory publication business as demonstrated by evidence in the record that any and all businesses interested in entering the market for these directories have equal access to all phases of the business, including equal access to the type of licensing agreement between appellee and Southern Bell regarding telephone number lists. Appellee is operating in a competitive market, and while we recognize the difficulty a fledgling business may experience in entering that market in competition with appellee because of the public's familiarity with appellee's directory and appellee's advantage in being able to utilize the distribution system set up by Southern Bell for its white pages, those advantages do not convert appellee's private enterprise into a public enterprise. Appellee's position in its market is comparable to that held by an editor-owner in a one-newspaper town and its business decisions are no more subject to public regulation than those decisions of its marketplace competitors.

We also find support for our determination that appellee's directory publication business is a private enterprise in *Southern Bell v. C & S Realty Co.*, 141 Ga. App. 216, 221 (233 SE2d 9) (1977), overruled on other grounds *Ga.-Carolina Brick &c. Co. v. Brown*, 153 Ga. App. 747, 752 (266 SE2d 531) (1980), where we stated: *"Since publication of the yellow pages is apart from Southern Bell's public service* it may relieve itself by valid contract from liability for ordinary

negligence, and such an agreement is not void as against public policy. [Cits.]" (Emphasis supplied.) While this language is fairly classified as dicta, we subsequently cited it with approval in the whole court case of *Southern Bell v. Coastal Transmission Svc.*, 167 Ga. App. 611, 612 (1b) (307 SE2d 83) (1983).

We agree with the trial court that appellee, in publishing the yellow pages directory, is a private enterprise and does not perform an essential public service, and thus appellee has no statutory or common law duty to accept the advertising submitted by appellant. While appellant articulately argues that appellee's rejection of his advertisement because some directory users might be offended is unreasonable in view of the total absence of complaints over a three-year period and appellee's inclusion in its directory of advertisements for massage parlors, escort services and abortion clinics, as judges we cannot interject our personal response to appellee's decision but instead must address the legal issues before the court and apply the applicable standard of review. Thus, we are bound by the trial court's findings if there is "any evidence" to support them, see *Logan Paving Co. v. Massey-Ferguson Credit Corp.*, 172 Ga. App. 368, 370 (323 SE2d 259) (1984), and because there was some evidence to support the trial court's findings that appellee is a private enterprise and that appellee rejected appellant's advertisement for a rational business reason, the trial court's judgment is affirmed.

*Judgment affirmed. Banke, C. J., Birdsong, P. J., Carley and Benham, JJ., concur. Beasley, J., concurs in the judgment only. Deen, P. J., and McMurray, P. J., concur specially. Pope, J., dissents.*

DEEN, Presiding Judge, concurring specially.

" 'Let your fingers do the walking' is a commercial jingle urging use of the yellow pages of telephone directories. That such classified sections are regarded as *valuable by business* is shown in the instant case." (Emphasis supplied.) *F. N. Roberts Corp. v. Southern Bell Tel. &c. Co.*, 132 Ga. App. 800 (209 SE2d 138) (1974). See also *Discount Fabric House v. Wis. Tel. Co.*, 345 NW2d 417 (Wis. 1984), where it was pointed out that this service is of "essential importance to the *public*." (Emphasis supplied.) In another exemplary case, which highlights judicial deference to an exercise of broad discretion, an advertiser, with an AAA alphabetic and almost addictive alliterative affliction or affinity analysis, actually attempted to attain, achieve and accomplish arithmetically an acme, apex, and alpha position in the directory by adding twenty-three A's to form its name. *AAAAAAAAAAAAAAAAAAAAAAAA v. Southwestern Bell Tel. Co.*, 373 P2d 31 (Okla. 1962).

1. There seems to be no dispute that the threshold question in

the instant case concerned classifying publication of the yellow pages as a purely private enterprise or as a matter connected with the telephone company's responsibilities as a public utility. The appellee correctly notes that if its publication of the yellow pages is a matter of private enterprise, it could reject with impunity any offers to place advertisements. This court in fact once suggested by obiter dictum that "publication of the yellow pages is apart from Southern Bell's public service . . ." *Southern Bell v. C & S Realty Co.*, 141 Ga. App. 216, 221 (233 SE2d 9) (1977), overruled on other grounds, *Ga.-Carolina Brick &c. Co. v. Brown*, 153 Ga. App. 747, 752 (266 SE2d 531) (1980). As pointed out by the majority opinion, the language in *Southern Bell v. C & S Realty Co.* was cited with approval in the whole court case of *Southern Bell v. Coastal Transmission Svc.*, 167 Ga. App. 611, 612 (307 SE2d 83) (1983), concerning whether Southern Bell's contractual limitation of liability for ordinary negligence violated public policy. Nevertheless, it is clear that in neither case was the precise issue, presented by the instant case, before this court. I find preferable the view that "[t]he telephone company has an exclusive private advertising business which, if not legally monopolistic, is tied to its public utility service of providing telephone service." *Discount Fabric House v. Wis. Tel. Co.*, supra at 421. Mere nomenclature or form (technically private) must always yield to substance or reality (partly public). Thus, "[i]n the absence of regulation by the State [as in the instant case with the yellow pages directory], the whole subject of the making of rules and regulations is left to the [public utility], subject only to control by the courts of their reasonableness or discriminatory character." *Railroad Comm. of Ga. v. Louisville &c. R. Co.*, 140 Ga. 817, 826 (80 SE 327) (1913). See also *Videon Corp. v. Burton*, 369 SW2d 264 (Mo. App. 1963), and *AAAAAAAAA-AAAAAAAAAAAAAA v. Southwestern Bell Tel. Co.*, supra. Accordingly, the appellee has considerable discretion in selecting the contents of the yellow pages advertising, although that exercise of discretion may be controlled by the courts if it is unreasonable or discriminatory. *AAAAAAAAAAAAAAAAAAAAAAAA* in particular emphasizes judicial deference to the exercise of this broad discretion unless it is arbitrary, unjust, or unreasonable.

I believe that the trial court (as well as the majority opinion) incorrectly classified the appellee's publication of the yellow pages directory as a private enterprise, although the trial court did, nevertheless, ultimately review the decision to reject the appellant's advertisement as if the appellee were a public utility. In doing so, the trial court concluded that the appellee's decision to exclude the specific advertisement was based upon a valid and rational business determination, and I agree. This test of a rational business determination by the ethics committee was the proper standard and was

correctly applied. It appears to be a higher standard or test than a board of directors' business judgment rule. The latter duty of informed good faith/honest belief is directed mostly toward protecting stockholders and depositors, while the former is a higher and larger duty for protecting the public at large.

The appellee maintained a set of standards for determining whether to accept an advertisement, and section 5.26 of those standards provided that advertisements with regard to homosexuals may be rejected on the grounds that such may be offensive to a segment of the directory users. The appellee obviously was not discriminatory in its application of this standard, as no other advertisements similar to that of the appellant were accepted for publication. The sole issue is whether the appellee's decision to reject the advertisement was arbitrary.

Certainly the general reason to exclude, i.e., the policy of not publishing an advertisement that may be offensive to a segment of society, is not irrational or arbitrary. The appellant contends that the specific application of that policy in this case was arbitrary, claiming that no evidence exists to support the appellee's determination that the appellant's advertisement may be offensive, in view of the absence of any complaints when the same advertisement had been published some time earlier. That assertion, however, is based upon pure speculation. The tenor of the times cannot be conclusively measured by the number of complaints; it is just as likely (and speculative) that some silent portion of the populance grimaced and bore the offense. This court should not impose upon the appellee a burden of conducting a certified statewide poll to measure societal approval of an advertisement.

This writer notes with great interest the appellant's contention that some people may consider the words "Christian," "Mormon," and "Islamic," which are printed in the directory, to be just as controversial or offensive as the words "gay" and "lesbian." This argument is not advanced to equate the last two quoted words on parity as a religion seeking equal treatment, exercise and protection with the first three quoted religions, but is articulated that similar treatment of advertisement in the yellow pages is sought because the latter is thought no less controversial and offensive to some than the former. In any event, the limited test to be applied in this case should be whether the publisher exercised good faith in making its determination that a particular advertisement may be offensive to a segment of society.

In the instant case, Edmund Gay (who was in charge of the directory) and the appellee's ethics committee considered the interests of both the gay community and the non-gay community. Based upon their experience and perception of societal attitudes, Gay and the committee decided that the appellant's advertisement may be offen-

sive to some people. There is absolutely no indication in the record that Gay and the committee were anything but sincere in that determination. In short, the appellee exercised discretion in making its determination, and there is nothing even to suggest arbitrariness. The accuracy of the appellee's perception of societal reaction is another issue, and one that is immaterial in the review of the publisher's exercise of discretion.

2. Where First Amendment speech interests are involved, radio and television broadcasters may be required to provide equal access, under a "fairness doctrine." See *Red Lion Broadcasting Co. v. FCC*, 395 U. S. 367 (89 SC 1794, 23 LE2d 371) (1969). This is because they use public airwaves and, with only limited, regulated competition, are essentially monopolistic. A newspaper publisher is not subject to similar regulation. *Miami Herald Pub. Co. v. Tornillo*, 418 U. S. 241 (94 SC 2831, 41 LE2d 730) (1974). Under the analyses employed in *Red Lion* and *Tornillo*, the position and duty of the appellee as a publisher of the yellow pages directory surely would lie somewhere between that of a radio/television broadcaster and a newspaper, although it would appear that the appellee is more akin to the former since some extra public duty exists. A parallel might be drawn with the responsibility and position of trustees of a public library. Such trustees obviously have a public duty to make available a broad selection of books. Nevertheless, certain limitations are obvious. Limited financial resources necessitate exclusion of some books, and the trustees may also exclude books which they determine in their discretion to be objectionable, provided that decision has a rational basis and is not discriminatory.

Since the appellee is a private entity, however, the First Amendment to the United States Constitution provides the appellant no basis or right to have its advertisement included in the yellow page directory. (Assuming *arguendo* that it did, commercial speech interests would be at issue, which do not enjoy the degree of protection extended to pure speech interests.) It should be emphasized nevertheless that the present generation of "lawyers has an unparalleled opportunity to aid in the formulation of a state constitutional jurisprudence that will protect the rights and liberties of our people, however the philosophy of the U. S. Supreme Court may ebb and flow." *State v. Jewett*, 146 Vt. __ (500 A2d 233) (1985). Art. I, Sec. I, Par. V of the Ga. Constitution provides that "[e]very person may speak, write, or publish sentiments on all subjects but shall be responsible for the abuse of that liberty." It may very well be that this state constitutional provision would have some bearing on the instant case, but unfortunately neither party raised this matter in the proceedings below, thus precluding this court from addressing it.

3. In summary, although I cannot concur with the classification of the appellee's publication of the yellow pages directory as a private enterprise, it appears that the trial court actually reviewed the decision to reject the appellant's advertisement as if the appellee were a public utility. Because the trial court thus properly analyzed the appellee's duty in selecting advertisements for the yellow pages directory and correctly concluded that no abuse of discretion occurred, I agree that the trial court should be affirmed.

I am authorized to state that Presiding Judge McMurray joins in this special concurrence.

POPE, Judge, dissenting.

The majority holds that defendant, as a private publisher, has an unqualified right to reject plaintiff's advertisement. I respectfully disagree. As noted by the trial court, both Southern Bell and defendant are wholly owned subsidiaries of BellSouth Corporation, one of the regional telephone operating companies formed as the result of the breakup of American Telephone & Telegraph Company. Southern Bell is a public utility; defendant is not a public utility. Prior to the breakup of AT & T, Southern Bell itself undertook the publication of the white and yellow pages directories. Since the breakup this function has been performed by defendant pursuant to a written agreement with Southern Bell. Defendant does not contend that this agreement has removed the white pages (alphabetical) directory from the realm of Southern Bell's responsibilities as a public utility (and consequently from regulation by the PSC, see Rule 515-12-1-.10, Rules of the Georgia Public Service Commission), yet it argues that said agreement effectively removes the yellow pages (classified) directory therefrom. This argument misses the point. If publication of the yellow pages directory is a service provided by Southern Bell which touches upon its responsibilities and obligations as a public utility, it may not avoid same merely by contracting with another not a public utility to provide the service. It follows that defendant, by contractually assuming Southern Bell's responsibilities and obligations in this regard, may not pursue same in a manner different from that required of Southern Bell. See generally *Ga. Power Co. v. Ga. Public Svc. Comm.*, 211 Ga. 223, 228 (85 SE2d 14) (1954), the court holding that it "seems to be a well-settled rule that public utilities have the right to enter into contracts between themselves, or with others, free from control or supervision of the State, so long as such contracts are not unconscionable or oppressive and do not impair the obligation of the utility to discharge its public duties." What, if any, responsibilities and obligations does defendant have in regard to the publication of advertisements in the yellow pages?

"The weight of authority seems to treat the publication — in-

cluding advertising — of a classified telephone directory [yellow pages] as being more nearly a private matter than one of public interest so as to make it subject to regulation by a Public Service Commission.

"However, a telephone company enjoys the advantage of being a monopoly for its area in the field of telephonic communication. As a subscriber for a private telephone I am entitled to have my name and telephone number listed in the regular directory. It is part of the service furnished in return for my payment. Without such a current alphabetical directory, the utility value of my telephone would be infinitely less. Apparently all the court and commission authorities agree that this regular directory is subject to the jurisdiction of and regulation by the Public Service regulatory bodies. A greater charge is paid for a business telephone than for a private telephone and in partial return therefor the customer is entitled to be listed under the proper business or professional grouping in the Classified Directory. Such subscriber also has what might be termed an option to buy advertising therein subject to the reasonable rules and regulations of the Telephone Company . . . The Classified Directory, like the regular directory . . . is provided by a company which enjoys an absolute monopoly. A business dependent even partially upon the telephone — and many businesses are to a great extent so dependent — is at a tremendous disadvantage with no telephone. It is prejudiced if not listed in the Classified Directory and the business is damaged if it is denied the right to advertise in the Classified Section, especially if competitors do advertise there. There is no comparable advertising media." *Videon Corp. v. Burton*, 369 SW2d 264, 269 (Mo. App. 1963). "The yellow pages are a very useful and beneficial component in providing telephone service to the public . . . Indeed, the yellow pages are more than a convenience to newcomers in town who need a doctor, lawyer, plumber, electrician or any number of services. Newcomers could not be expected to begin in the front of the alphabetical listings and search until they find the desired service." *State ex rel. Utilities Comm. v. Southern Bell Tel. &c. Co.*, 299 SE2d 763, 765-66 (N.C. 1983), overruling *Gas House, Inc. v. Southern Bell Tel. &c. Co.*, 221 SE2d 499 (N. C. 1976). "Although there are 'yellow pages' published by independent publishers, the telephone company's yellow pages is the only one distributed to everyone with a telephone." *Discount Fabric House v. Wis. Tel. Co.*, 345 NW2d 417, 419 (Wis. 1984).

Yellow pages advertising "arises out of a private business transaction of the telephone company which in all other respects has been recognized as a monopoly and has been regulated by the Public Service Commission in performing its services. Certainly, the telephone company would not argue that it is engaged in a business other than one which performs a service of great importance to the public when

it distributes a yellow pages book without cost to every telephone customer. The telephone company without question holds itself out as willing to give reasonable public service to all who apply for an advertisement in the yellow pages . . . The telephone company has wisely and responsibly taken advantage of an energy conserving society, both as to time and natural resources, by advertising that persons should determine the availability of products before traveling to shopping areas by letting their fingers do the walking through the yellow pages. The telephone company has an exclusive private advertising business which, if not legally monopolistic, is tied to its public utility service of providing telephone service. Without additional or identifiable charges, every telephone customer receives the yellow pages free with the telephone service. There is nothing in this record to show that there is any other mode of advertising available to [plaintiff] which reaches as many customers, is of a similar nature as the yellow pages, and is inexorably tied to the telephone service." *Discount Fabric House v. Wis. Tel. Co.*, supra at 420-21. "The company derives revenue from this source which should be and is considered in fixing the over-all rates . . . We believe that the publication of the Classified Directory and the advertising thereunder is a method, procedure and operation which is designed for and actually does facilitate the business of affording telephonic communication, is truly a monopoly in that advertising field and is public business insofar as its business subscribers are concerned. Such a publication sui generis ought to be subject to reasonable rules and regulations." *Videon Corp. v. Burton*, supra at 269-70. See also *Allen v. Mich. Bell Tel. Co.*, 171 NW2d 689 (Mich. App. 1969). See generally OCGA § 46-2-20 (a) and (c).

The yellow pages have never been and are not now regulated by the PSC. However, as noted above, yellow pages advertising is not an enterprise entirely separate from the telephone company's responsibilities and obligations as a public utility. The language cited by the majority from the opinion in *Southern Bell v. C & S Realty Co.*, 141 Ga. App. 216, 221 (233 SE2d 9) (1977), and repeated in *Southern Bell v. Coastal Transmission Svc.*, 167 Ga. App. 611 (1b) (307 SE2d 83) (1983), is indeed obiter dicta and, in my view, should be disapproved. "In the absence of regulation by the State, the whole subject of the making of rules and regulations is left to the [public utility], subject only to control by the courts of their reasonableness or discriminatory character." *Railroad Comm. of Ga. v. Louisville &c. R. Co.*, 140 Ga. 817, 826 (80 SE 327) (1913). A public utility may not enforce arbitrary requirements, but "should be given great leniency in restricting the contents of advertising, not only for the protection and preservation of its own good name but also to shield the public from pillage and misunderstandings." *Videon Corp. v. Burton*, supra at 270. See,

e.g., *Dollar A Day Rent A Car v. Mountain States Tel. &c. Co.*, 526 P2d 1068 (Ariz. App. 1974); *Boyer v. Southwestern Bell Tel. Co.*, 252 FSupp. 1 (D. Kan. 1966); *AAAAAAAAAAAAAAAAAAAAAAA v. Southwestern Bell Tel. Co.*, 373 P2d 31 (Okla. 1962); *Southwestern Bell Tel. Co. v. Tex. State Optical*, 253 SW2d 877 (Tex. Civ. App. 1952). See also *Gas Light Co. of Columbus v. Ga. Power Co.*, 225 Ga. 851 (171 SE2d 615) (1969); *Ga. Public Service Comm. v. Ga. Power Co.*, 182 Ga. 706, 715 (186 SE 839) (1936); and *Southern Bell Tel. &c. Co. v. Beach*, 8 Ga. App. 720 (1) (70 SE 137) (1911), to the effect that a public utility, having a monopoly in the section where it operates, has no authority to select customers or discriminate against the members of a class it has elected to serve.

It follows from the foregoing that defendant has considerable discretion regarding the contents of yellow pages advertising. The exercise of that discretion should be controlled by the courts, in the absence of regulation by the PSC, only to the extent that it is unreasonable or discriminatory. That is, defendant may not regulate the contents of yellow pages advertising in an arbitrary or capricious manner. Was defendant's refusal of plaintiff's advertisement in this case arbitrary and capricious?

The trial court concluded that the business judgment of defendant to exclude the words "gay" and "lesbian" was based on a valid and rational business determination that some segment of the readers of the yellow pages "could perhaps" be offended by such words in the context used. This finding is apparently premised upon defendant's "ethics" policy (advertisement with respect to homosexuals "may at this time be offensive" to users of the yellow pages) and defendant's testimony that plaintiff's advertisement "may be considered controversial by, or may offend, a certain segment of its customers" and that defendant also seeks to uphold the "prestige" of the yellow pages directory. Defendant's "evidence" in this regard can only be fairly described as mere opinion or belief, affording no hint as to the factual basis for its conclusion. There are *no* facts in this case which support defendant's conclusion that the subject advertisement "may be" offensive to users of the yellow pages, only patent speculation. Indeed, the positive evidence of record compels a finding contrary to defendant's conclusion — during the three years in which the subject advertisement appeared in the yellow pages, not one complaint was received from the public or a customer. Cf. *Boyer v. Southwestern Tel. Co.*, supra (10 complaints received over a year's time by master plumbers concerning classification of sewer and drain cleaners under the general heading "plumbing" in yellow pages were de minimis and did not establish that the public was confused or misled to its detriment). Compare *Videon Corp. v. Burton,* supra (177 complaints received by the Better Business Bureau considered as part of the sub-

stantial evidence supporting PSC's finding of no unlawful discrimination and no unreasonableness in telephone company's refusing to accept Videon's advertising in the yellow pages as submitted because of the implication that Videon was rendering free service).

A "rational" business decision is necessarily one "of, relating to, or based upon reason." Webster's Third New Intl. Dictionary at 1885. "Conclusions of witnesses are of no probative value unless the facts on which the opinions are based sustain the opinions rendered." *Gordy Tire Co. v. Bulman*, 98 Ga. App. 563, 564 (106 SE2d 332) (1958). See generally OCGA § 24-9-65. "Findings of fact of a court sitting without a jury are not to be disturbed on appeal unless clearly erroneous. OCGA § 9-11-52 (a). The 'clearly erroneous' standard requires reversal of a trial court's findings of fact if there is no evidence to support them. [Cit.]" *Richmond County Hosp. Auth. v. Richmond County*, 255 Ga. 183, 191 (336 SE2d 562) (1985). " 'If the court's judgment is based upon a stated fact for which there is no evidence, it should be reversed.' [Cit.]" *Lamas v. Baldwin*, 140 Ga. App. 37, 39 (230 SE2d 13) (1976). There being no probative evidence to support the trial court's finding that defendant's refusal of the subject advertising was based on a valid and rational business determination (i.e., that such refusal was not arbitrary and capricious), the judgment of the trial court should be reversed. See generally *Big Canoe Corp. v. Williamson*, 168 Ga. App. 179 (308 SE2d 440) (1983).

In light of the foregoing discussion, I find no merit in defendant's assertion that compelling it to accept the subject advertisement violates its rights under the First Amendment to the United States Constitution. See, e.g., *Ohralik v. Ohio State Bar Assn.*, 436 U. S. 447 (98 SC 1912, 56 LE2d 444) (1978); *Pines v. Tomson*, 206 Cal. Rptr. 866 (4) (Cal. App. 1984). See also *Virginia State Bd. of Pharmacy v. Va. Citizens Consumer Council*, 425 U. S. 748 (96 SC 1817, 48 LE2d 346) (1976); *Alaska Gay Coalition v. Sullivan*, 578 P2d 951 (Alaska 1978).

DECIDED DECEMBER 5, 1985 —
REHEARING DENIED DECEMBER 19, 1985 —

*Ralph S. Goldberg*, for appellant.
*R. Phillip Shinall III*, for appellee.